[Crim. No. 7007. In Bank. Oct. 25, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. NATHANIEL GAINES, Defendant and Appellant.

William B. Wolfson, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, George J. Roth and Jack E. Goertzen, Deputy Attorneys General, for Plaintiff and Respondent.

McCOMB, J.—This is an automatic appeal from a judgment of guilty of murder in the first degree, pursuant to the provisions of section 1239, subdivision (b), of the Penal Code. The jury fixed the punishment at death.

Viewed in the light most favorable to the People, the record discloses the following facts:

Mr. and Mrs. Broxton operated a neighborhood grocery store. Between 7:30 and 8 p. m. on November 26, 1960, Mrs. Broxton was in the storage room when she heard a voice say, "This is a stick-up." She looked out into the main part of the store, where she saw defendant with a gun in his hand, another man wearing a blond wig and a mask, her husband, and Miss Withers, an employee of the store.

Defendant commanded Mrs. Broxton to come out, and after inquiring, "What is back there?" ordered her, Miss Withers and Mr. Broxton back to the storage room, saying, "No funny business." Defendant followed them, and the other man went to the cash register.

When they reached the back room, defendant told them to sit down. He then told Mr. Broxton to lie down on the floor. Mr. Broxton went down on his knees, and defendant directed him to lie in a certain way. Mr. Broxton started to say something, and Mrs. Broxton said, "Don't, Honey. Do what he says." Defendant told them he was worried about Mr. Broxton, and Mr. Broxton lay down.

Defendant then told Mrs. Broxton to lie down. She said: "I can't. I have arthritis in my knee. I can't lie down." He said: "All right, I am not afraid of you. I want this big boy."

Mr. Broxton then straightened out on the floor. Defendant walked over, placed a gun two or three inches from his head,

and shot him, with the result that Mr. Broxton died. Defendant removed a billfold from Mr. Broxton's hip pocket and walked out.

Defendant was identified by Mrs. Broxton and Miss Withers. The gun which had been used had been taken out of pawn by defendant a few days previously and was later discovered under a water heater in his home.

Defendant presents these questions:

First. *Was defendant ably defended by a deputy public defender of the Los Angeles County Public Defender's Office?*

*Yes.* Defendant contends that Mr. John Moore, a member of the staff of the Los Angeles County Public Defender's Office, ineptly handled the trial defense, with the result that he was denied the right of effective aid of counsel, and such aid as was rendered prejudiced the jury against him.

An examination of the record discloses that this contention is devoid of merit. The lawyer representing defendant was experienced and well qualified. (See *People* v. *Hughes,* 57 Cal.2d 89, 99 [10] [17 Cal.Rptr. 617, 367 P.2d 33].) In the present case the record shows that there was no misconduct upon the part of defendant's attorney and that he ably represented defendant.

Defendant's specific contentions are:

(a) *That his attorney erred in withdrawing his plea of not guilty by reason of insanity.*

Originally defendant entered pleas of not guilty and not guilty by reason of insanity. Two doctors were appointed, pursuant to section 1027 of the Penal Code, to examine defendant as to his mental status. One of the doctors was further appointed under section 1871 of the Code of Civil Procedure, with electroencephalogram testing authorized. On motion of defendant's counsel, a third doctor was appointed under section 1871 of the Code of Civil Procedure "to conduct examination of the defendant as to his sanity at the time of the commission and presently." A fourth doctor was appointed "to conduct electroencephalogram tests . . . sleep recording and Metronal activation tests."

The record reveals that "the electroencephalogram was normal, before, during and after sleep and during, and after metrazol activation" and that no abnormality was recorded.

Apparently two of the three appointed psychiatrists concluded that defendant was legally sane when the crime was committed, for the third expert (Dr. McGinnis), in his report filed with the court, refers to their examination and inferen-

tially their conclusions, and states that he disagrees. However, he concluded in his report that he was "unable to determine with any degree of certainty, what the defendant's mental status then . . . really was." When cross-examined on the witness stand, he testified: "Q. In other words, what you are saying is that now he doesn't remember? You are not saying at the time he didn't know what he was doing? You are not saying that, is that right? A. That is quite right, yes."

With this information, defendant's counsel withdrew the previous plea of not guilty by reason of insanity.

Clearly, under the record there was no reasonable probability of any jury's concluding that insanity existed in defendant at the time of the commission of the crime, and therefore defense trial counsel properly exercised his discretion in withdrawing the plea.

 (b) *That defendant's counsel erred in not bringing before the jury on the main trial the testimony of Dr.Mc-Ginnis to negate defendant's ability to form specific intent.*

This contention is obviously not well founded, for defendant's counsel was presented with a strategic problem in this regard: knowing that the main trial would be followed by a trial on the penalty by the same jury, should he take the chance of antagonizing them by trying to force an extremely weak theory of lack of intent, with the probable result that they would show no sympathy for his client when the penalty trial occurred, or should he save this point and then exert it as forcefully as possible (as the record indicates he actually did) on the penalty trial, where it might have some possible impact to sway the jury to leniency in their verdict on the penalty?

Competent lawyers in the same situation would disagree on which course to take, depending on who they were, what their overall defense was, what their discussions with their client had elicited, and many other factors. Taking one view or the other would not deny the client the effective aid of counsel.

 (c) *That defendant's trial counsel was guilty of an almost total resignation from his responsibility to conduct a defense for defendant, in that he failed to (1) properly cross-examine the prosecution's witnesses, (2) call any witnesses in behalf of defendant, and (3) make an argument to the jury on the main trial.*

This contention is clearly without merit. Defendant's counsel on appeal has not suggested any additional questions which could have been asked or any witnesses who could have

been called in defendant's behalf. An examination of the record shows an adequate examination of defendant's trial counsel of the witnesses called by the prosecution.

██ Likewise, it would have been futile for defendant's counsel to have argued to the jury on the main trial of the case. Defendant's identification was positive, the description of the commission of the crime was clear, and the murder weapon was traced to defendant and was discovered hidden in his home. Defendant's trial counsel, aware of the impending penalty trial, properly reached a decision that to make an argument with no reasonable possibility of success on the main trial would lessen the impact of his argument on the penalty phase. He therefore waived argument on the main trial and argued the matter fully and completely on the penalty phase of the case.

██ (d) *That defendant's counsel should have offered specific evidence and instructions relating to the meaning and effect of a sentence of life imprisonment.*

This subject was adequately covered during the trial on the penalty phase of the case. Defendant's counsel presented his case as expertly as did counsel for each of the other two defendants, and the trial techniques utilized by him gave defendant much more than the minimum requirements for a fair defense.

██ Second. *Was defendant's plea of not guilty by reason of insanity properly withdrawn?*

*Yes.* The record discloses that defendant did not personally withdraw the plea of not guilty by reason of insanity, but that the plea was withdrawn by his counsel. When the transcript on appeal was being prepared, the trial court's attention was directed to a discrepancy between the reporter's transcript and the clerk's transcript relating to the personal waiver of the plea of not guilty by reason of insanity. The following occurred: "THE COURT: In that connection I would like the record to show that there were several doctors who had been appointed to examine the defendant and to advise the Court. There was Dr. Crahan and Dr. Abe, and as late as May 5th, Dr. McGinnis and Dr. Alberto Mariacci had examined the defendant and reported to both counsel and to the Court. I think it was on the basis of those reports which were made a part of the record here, that counsel withdrew the plea of not guilty by reason of insanity. MR. LENOIR: I am not disputing with the Court in that regard. The only thing I am asking is that the Clerk's transcript should be the

same as the reporters' transcript, which I think correctly reflects the proceedings had on this matter. THE COURT: Very well. I will order the Clerk's transcript to be corrected to show that the defendant did not personally withdraw the plea of not guilty by reason of insanity, but that that was done by his counsel.''

It is clear that a criminal defendant's plea of not guilty by reason of insanity must be made by the defendant *himself* in open court. Section 1016 of the Penal Code provides that there are ''five kinds of pleas'' to an indictment, information, or complaint, and the fifth enumerated plea is ''Not guilty by reason of insanity.'' Section 1017 sets forth the proper form for each of these five pleas, and the immediately following section, 1018, flatly directs that unless otherwise provided by law, ''every plea'' must be put in by ''the defendant himself in open court.''

The code sections, however, relate only to the *making* of the plea; they do not require that a *withdrawal* of it be made by the defendant personally, and we should not read such a requirement into the statutes. In the absence of a statute requiring that the withdrawal of a plea of ''not guilty by reason of insanity'' be made by a defendant himself, or the presence of some compelling circumstance not shown here, we should not depart from the customary practice by which an attorney acts for his client throughout the trial.

The fact that section 1018 refers only to the making of pleas may have led many attorneys and judges to believe that pleas could properly be withdrawn by the attorney, and under these circumstances it would seem improper to reverse convictions merely because such a procedure had been followed, and in the present case no claim is made by defendant that his attorney lacked authority to withdraw the plea.

The case of *People* v. *Rogers*, 56 Cal.2d 301 [14 Cal.Rptr. 660, 363 P.2d 892], is distinguishable on its facts. There the defendant pleaded not guilty and waived trial by jury, and thereafter his attorney and the prosecutor entered into a stipulation before the trial judge ''that Your Honor will be restricted to either a finding of second degree murder or a finding of voluntary or involuntary manslaughter and that Your Honor would be precluded from a finding of first degree murder or a finding of not guilty under the circumstances.'' Since the quoted language specifically precluded the trial judge from finding the defendant not guilty, the stipulation necessarily amounted to a plea of guilty, in the alternative, to

one of the specific crimes referred to, the choice to be made by the judge after hearing the evidence. The stipulation, of course, involved the withdrawal of the prior plea of not guilty, but it also constituted the making of a plea of guilty, and this fact brought it directly within the language of section 1018. Since the guilty plea was not made by the defendant *himself*, we reversed the judgment.

In the present case it was not necessary for defendant himself to request a withdrawal of the plea of "not guilty by reason of insanity" in order to remove that issue from the case, and the trial court did not err in permitting the withdrawal of the plea to be made by defendant's attorney.

■ Third. *Did the prosecution commit prejudicial error in the trial of the case?*

*No.* Defendant contends that "the prosecutor blatantly misstated the law"; that it "would appear the prosecutor is going to ease the difficult path ahead of appellant if he is paroled after receiving sentence of life imprisonment by the simple expedient of executing him now"; and that the prosecutor's remarks relating to the effect of a sentence of life imprisonment gave the jury the impression that defendant, if so sentenced, "would be out in seven years."

On the contrary, the record indicates that the prosecution displayed rather unusual restraint in the presentation of its case in view of the brutal nature of the crime.

Relative to the contention that the prosecuting attorney misled the jury as to the effect of life imprisonment, the record discloses that in his closing argument he stated: ". . . when and if these persons come before them [the Adult Authority], they have the verdict of the jury that life is an appropriate penalty—and life in California means they can be paroled and nobody says we are going to keep them for a thousand years any more than I would concede they are going to let them go after seven years. I never intended by my expressions to infer that as soon as the seventh year fell they automatically throw the gates wide open. All I mean to say is that is a fact that they may be paroled from prison, and I ask you to take that in mind in determining . . . the penalty."

An examination of the record discloses that various other remarks of the prosecution which defendant admits are not individually prejudicial were not collectively so, and therefore under article VI, section 4½, of the Constitution would not warrant a reversal of the judgment.

■ Fourth. *Did questions addressed to defendant and his codefendants relative to whether defendant's wife was present at a meeting with them constitute prejudicial error?*

*No.* Defendant complains of certain questioning by the prosecution on the penalty phase of the trial relating to whether or not his wife was present when he and his codefendants had certain conversations concerning the robbery of the Broxtons' store.

No conversation between defendant and his wife was ever elicited. In addition, the presence of the wife at a meeting with the husband and other persons would void any possible confidentiality which might have existed had the husband and the wife been alone together. (McCormick, Evidence (1954) § 84, p. 172.)

■■ Fifth. *Did the trial court commit prejudicial error in permitting the prosecution to give the opening and closing arguments to the jury on the penalty phase?*

*No.* (*People* v. *Corwin,* 52 Cal.2d 404, 407 [2] [340 P.2d 626]; cf. *People* v. *Purvis,* 52 Cal.2d 871, 884 [346 P.2d 22].)

■ Sixth. *Did the trial court err by taking verdicts in regard to only two of the defendants on the penalty phase?*

*No.* Defendant contends that the court committed error in taking the case from the jury on the penalty phase of their deliberations. The record shows that the jury retired for deliberations on this phase of the case on Wednesday, May 24, 1961. On Friday morning, May 26, 1961, they returned to the courtroom at 11:10 a. m. to have read to them the testimony of defendant Rollins (a codefendant) and his wife. At 11:55 a. m. the jury retired for further deliberations.

At 3:43 p. m. the court called the jury back into the courtroom, and the following proceedings occurred: "THE COURT: Let the record show that the three defendants and their respective counsel are present, and that the members of the jury and the alternates are in their proper places in the jury box. Mr. Foreman, my inquiry is not in the nature of one trying to hasten or push you, but it is simply one of inquiry. Have you been able to reach any verdicts yet? MR. SCURR: Yes, your Honor. THE COURT: As to one or all of the defendants? MR. SCURR: As to two of the defendants. THE COURT: Would you hand those verdicts to the bailiff, please? MR. SCURR: I did not bring those verdicts with me. As yet, they are not signed. THE COURT: Well, they are not verdicts then. MR. SCURR: We reached our final decision on them, but they were not signed because it was our understanding we sign them all at once.

THE COURT: Let me inquire as to the remaining defendant, do you think you can reach a verdict? MR. SCURR: Yes, your Honor, I personally do. THE COURT: Shortly, or over the weekend? MR. SCURR: Well, I think we can have a verdict tomorrow, if you want it done. MR. LENOIR: May we approach the bench, your Honor? THE COURT: Yes, will counsel approach the bench, please.''

The following proceedings were then had at the bench, outside the hearing of the jury: ''MR. LENOIR: I don't know what the procedure is, but when the foreman said he thought they could reach a verdict as to the other defendant, one juror in the back—I believe she is Number 10—she shook her head in a negative fashion. THE COURT: Mrs. Tisherman. MR. LENOIR: Yes, your Honor, I made that observation, and I don't know what the procedure is. THE COURT: I would suggest we send them back and let them sign the two verdicts, and then let them see what they can do about the remaining one. MR. HOWARD: That is perfectly agreeable to the People. THE COURT: Any objections? MR. MOORE: No objections. MR. LENOIR: No objections, your Honor. MR. JENSEN: No objections. THE COURT: All right, I will so instruct them.''

The following proceedings then took place in open court, in the presence and hearing of the jury: ''THE COURT: Would the jury please retire to the jury room and sign the verdicts on which you have agreed and then return to the Courtroom? All defendants and counsel may wait in the Courtroom until the jury returns.''

The jury left the courtroom at 3:50 p. m. for further deliberations and returned at 3:55 p. m.

The jury fixed defendant's penalty at death and codefendant Barnes' penalty at life imprisonment. After the jury was polled and these verdicts were recorded, the following occurred: ''THE COURT: Now, as to your verdict on the third defendant, Clifford Milton Rollins, do you still think you can reach a verdict after more deliberations? MR. SCURR: Yes, your Honor. THE COURT: All right, the jury may retire for further deliberations.''

The jury retired to the jury room at 4:10 p. m. for further deliberations. Subsequently, the following transpired: ''MR. JENSEN [Attorney for codefendant Rollins]: If it please the Court, the Court inquired whether we desired further deliberations by the jury. THE COURT: That is correct. MR. JENSEN: I would like to ask the Court, does the Court mean that the

jury can be stopped from further deliberations? THE COURT: At this time, there are two choices available to you. You can allow the jury to continue with their deliberations until they reach a verdict, or you can ask that it be taken from the jury on the ground that the jury has not been able to reach a verdict. MR. JENSEN: I would like the Court to declare the jury unable to reach a verdict. THE COURT: Then do you want another jury to fix the penalty, or do you want the Court to fix the penalty? MR. JENSEN: I want the Court to fix the penalty. THE COURT: You want me to fix it, then? MR. JENSEN: Yes, that is our desire, your Honor. THE COURT: Is that what you want me to do, Mr. Rollins? DEFENDANT ROLLINS: Yes. THE COURT: Is there any opposition? MR. JACOBSON: No, your Honor, the People have no objection. THE COURT: Very well. Mr. Bailiff, bring the jury back in.''

At 4:40 p. m., the members of the jury and the alternates returned to the courtroom, and the following proceedings were had in the presence and hearing of the jury: ''THE COURT: Let the record show the defendant Rollins is present with his counsel, the Deputy District Attorneys are present, and the members of the jury and the alternates are all in their proper places in the jury box. On motion of defendant's counsel, I am going to dismiss the jury. I feel you have done a very good job up to now, and I doubt whether you will reach a decision within a convenient time, so I will dismiss the jury. I want to thank you for your verdicts, and as a matter of fact, you have arrived at exactly the same place I have arrived at.'' The court then fixed the penalty of defendant Rollins at life imprisonment.

Section 1160 of the Penal Code provides, in part: ''On a charge against two or more defendants jointly, if the jury cannot agree upon a verdict as to all, they may render a verdict as to the defendant or defendants in regard to whom they do agree, on which a judgment must be entered accordingly, and the case as to the other may be tried again.''

Since the jury actually had agreed upon a verdict as to defendant, it was proper for the court to formally take the verdict and then send the jurors back to deliberate on the penalty for his codefendant Rollins. Likewise, defendant Rollins had the right to waive further deliberations and leave his fate up to the trial judge.

An examination of the record discloses that it is free from prejudicial error and that defendant had a fair trial, well

represented by a competent attorney before an able and impartial trial judge.

The judgment is affirmed.

Gibson, C. J., Schauer, J., and White, J., concurred.

TRAYNOR, J.—I dissent.

Defendant's plea of not guilty by reason of insanity was improperly withdrawn. Penal Code section 1018 unequivocally provides that "Unless otherwise provided by law every plea must be put in by the defendant himself in open court." Penal Code section 1016 enumerates the five pleas that may be entered, including "5. Not guilty by reason of insanity." Read together these sections set forth a clear statutory procedure: unless otherwise provided by law, the pleas enumerated in section 1016 must be put in by the defendant himself in open court. The purpose of section 1018 is to ensure that the defendant in a criminal action personally puts in issue the issues raised under any of the pleas included in section 1016. Since the withdrawal of a plea removes from litigation an issue that the defendant has personally put in issue, the withdrawal must also be by the defendant personally. Otherwise the issues to be litigated would not include those raised by defendant personally. Defendant had personally put his sanity in issue by his plea in open court of not guilty by reason of insanity. That issue remained in the case, for it was not personally withdrawn by defendant. Counsel's withdrawal of the plea of not guilty by reason of insanity removed a legal excuse for the crime and was in effect a plea that "whereas before I pleaded that I did not do this act, but if I did, I am to be excused, now I plead that I did not do this act, but if I did, I have no excuse." Such a plea was not defendant's own as section 1018 requires.

In *People* v. *Rogers*, 56 Cal.2d 301 [14 Cal.Rptr. 660, 363 P.2d 892], we reversed a judgment of conviction of murder in the second degree where, after defendant had personally pleaded not guilty pursuant to section 1018, counsel stipulated that the trial court be restricted to finding the defendant guilty of murder in the second degree or of manslaughter and precluded from a finding of first degree murder or a finding of not guilty. We held that the stipulation violated section 1018 "since it purported to eliminate from the trial the question of defendant's innocence." (56 Cal.2d at 306.) Similarly, the withdrawal of defendant's plea of not guilty by reason of insanity eliminated from the trial the question of his sanity

at the time of the commission of the offense. If counsel may remove from litigation issues that the Legislature has directed must be personally put in issue by the defendant and that have been personally put in issue by him, the purpose of the statute is frustrated.

There is no merit in the contention that the plea of not guilty by reason of insanity is not one that section 1018 requires the defendant to make himself in open court since "such plea is only an admission of commission of the acts charged, coupled with a denial of guilt . . . resting upon the remaining defense of insanity." (*People* v. *Pincus,* 131 Cal. App. 607, 610 [21 P.2d 964].) That contention is contrary to the plain mandate of section 1018; nor does the *Pincus* case support it. That case involved the entry by the defendant's counsel of a plea of not guilty by reason of insanity after the defendant had entered and withdrawn his plea of not guilty. Thus the defendant was not deprived of a trial on any issue that he had personally put in issue. Moreover, he personally waived a jury trial on the issue of insanity. On the facts of that case, the court correctly held that the plea "was really a plea by defendant himself, and that it did not result, by reason of the form in which it was made, in a miscarriage of justice, nor did it deprive defendant of any right. . . ." (131 Cal.App. at p. 610.)

It is immaterial that the plea of not guilty by reason of insanity has been characterized as procedural rather than substantive for the purpose of determining whether the issue of sanity could be constitutionally determined in a separate trial. (See *People* v. *Troche,* 206 Cal. 35, 44 [273 P. 767]; *People* v. *Leong Fook,* 206 Cal. 64, 74-75 [273 P. 779].) The question in the present case is whether that issue is to be determined at all, for the withdrawal of defendant's plea deprived him of the right to a jury trial on the issue of his sanity as guaranteed by Penal Code section 1026. Error that results in the deprivation of a basic right necessarily requires reversal to preclude prejudice to the judicial process and to the procedural rights of a litigant even though there might be equally fair alternatives consonant with due process. (*People* v. *Rogers,* 56 Cal.2d 301, 307 [14 Cal.Rptr. 660, 363 P.2d 892]; *People* v. *Holmes,* 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]; *In re Brain,* 70 Cal.App. 334, 335 [233 P. 390].)

In *People* v. *Rogers, supra,* we reversed the judgment even though counsel's improper withdrawal of the plea of not guilty was designed to benefit the defendant. In *People* v. *Holmes,*

*supra,* we reversed the judgment on the ground that the defendant had not personally waived his right to a jury trial. "Experience has shown that there is sound reason for this requirement. If the waiver were left to implication from conduct, there would be a danger of misinterpretation with respect to a right the importance of which requires there be certainty. Moreover, appellate courts would be faced with the burdensome task of determining whether the facts of the particular case warrant such an implication, whereas trial courts, without any difficulty, can eliminate doubt and safeguard the rights of both the defendant and the People by obtaining express statements from the defendant, from his attorney, and from the prosecuting attorney not merely as to whether a trial by jury is desired but specifically that a jury is or is not waived." (54 Cal.2d at p. 444.) "Manifestly the entry of a plea in a prosecution for a felony cannot be said to be less important than the waiver of trial by jury." (*People* v. *Rogers,* 56 Cal.2d 301, 307 [14 Cal.Rptr. 660, 363 P.2d 892].)

It is immaterial that until the opinion in this case was filed, defendant made no claim "that his attorney lacked authority to withdraw the plea." In presenting his appeal, he was entitled to rely on the settled rule that a failure to comply with section 1018 requires reversal on appeal, for the very purpose of that section is to avoid uncertainties as to a defendant's intent in entering or withdrawing his plea. Moreover, now that the court has stated that such a claim is relevant, defendant has filed an affidavit that he did not authorize the withdrawal of his plea of not guilty by reason of insanity and that he believed at the time of the trial that the issue of sanity was being litigated during the trial on the issue of penalty.[1] His trial

---

[1] "I, NATHANIEL GAINES, being first sworn, depose and say:

"That in the trial of the above-entitled action, at no time was there any discussion whatsoever had between myself and my attorney, JOHN MOORE, regarding the withdrawal of my plea of 'Not Guilty By Reason of Insanity'; that at no time, either before, during or for some period of time after the conclusion of said trial was I ever aware that I was not to have and did not have a trial on the issue of my sanity at the time of the commission of the offense alleged as a result of said plea of 'Not Guilty By Reason of Insanity'; that at no time ever, did I or have I authorized, instructed, suggested or acquiesced in the withdrawal of said plea of 'Not Guilty By Reason of Insanity'; but that I, at all times until the certification of the transcript on appeal, was under the impression that I was to and did receive a trial on the issue of sanity at the time of the offense charged; that I was under the impression at all times until said certification that the penalty phase of my trial was in truth and fact the trial on the issue of sanity as raised by my plea of 'Not Guilty By Reason of Insanity' as well as the penalty phase should it be determined therein that I was sane at the time of the offense charged; that such

counsel has also filed an affidavit that he does not recall discussing the withdrawal of the plea with defendant. If defendant did not authorize the withdrawal of the plea, he has been denied the right to a jury trial on a vital issue in his case, and habeas corpus will lie to determine whether the withdrawal of the plea was in fact authorized. (*In re Martinez*, 52 Cal.2d 808, 815 [345 P.2d 449].) The error in permitting defendant's counsel to withdraw his plea should be corrected on appeal, however, and the problem of collateral attack on the judgment thereby obviated.

There is no merit in the contention that the error was not prejudicial. In *In re Brain, supra,* the defendant's attorney had improperly entered a plea of guilty to a charge of burglary. The court held that ''[s]ection 4½ or article VI of the constitution could not be applied in the instant case even though we considered the error a procedural one, because of the absence of any record upon which we might judge of the guilt or innocence of the petitioner.'' (70 Cal.App. at p. 335.) Similarly, the improper withdrawal of defendant's plea of not guilty by reason of insanity in the present case has deprived this court of a record as to defendant's sanity from which to determine the effect of the error. How then can it reasonably be said that an examination of the entire record discloses that there has not been a miscarriage of justice, when a record on the crucial issue does not exist because of the withdrawal of defendant's plea? The only evidence bearing upon defendant's competency at the time the offense was committed is that introduced in mitigation of the penalty under Penal Code section 190.1. To conclude from a review of this evidence that

belief on my part was affirmed and justified by the presentation of medical testimony concerning my sanity during the penalty hearing.

''I further declare that until I received a copy of the transcript on appeal did I realize that I had not yet had a trial on my plea of 'Not Guilty By Reason of Insanity'; that I am a layman and completely unfamiliar with the proceedings leading up to and including trial, but that since my only defense to the crime charged was my complete inability to remember the acts with which I was charged, my only excuse would be insanity; that had I been informed that my plea of 'Not Guilty By Reason of Insanity' was to have been withdrawn, I would not have acquiesced in or approved of such withdrawal under any circumstances whatsoever.

''That this affidavit is executed for the purpose of setting out the true facts surrounding the withdrawal of the insanity plea in my case as I know them, is true and correct and is made in support of a petition for rehearing following the decision in the above-entitled case.

/s/ NATHANIEL GAINES

NATHANIEL GAINES''

defendant could not sustain the burden of proving his insanity assumes that the evidence offered in mitigation of the penalty was necessarily identical with the evidence that would have been offered on a sanity hearing. Even if defendant would have introduced the same evidence, his right to a jury determination of his sanity precludes this court from determining that issue for the first time on appeal.

Peters, J., and Tobriner, J., concurred.

Appellant's petition for a rehearing was denied November 21, 1962. Traynor, J., Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.