[Crim. No. 7630. In Bank. June 18, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS LAMAS VARNUM, Defendant and Appellant.

426

H. Clay Jacke, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—Thomas Varnum, John Jackson, and Edward Jackson were found guilty by a jury of first degree murder, kidnaping for the purpose of robbery with bodily harm, first degree robbery, and assault with intent to commit robbery. The jury fixed the punishment of Varnum at death for the kidnaping and the murder, and his appeal comes before us automatically under subdivision (b) of section 1239 of the Penal Code.[1]

The evidence included confessions voluntarily made by Varnum, John Jackson, and Edward Jackson shortly after they were arrested.

On the evening of August 16, 1962, Varnum and the Jacksons, armed with two revolvers, left an apartment house where the Jacksons lived and walked a few blocks, looking for someone to rob. They noticed a service station with only one attendant, approached it, forced the attendant, Norman Merrill, to open the cash register, and removed the money. Fearing that a woman who had just walked into the area might have observed the holdup, they compelled Merrill to

---

[1]John Jackson and Edward Jackson were sentenced to life imprisonment for the murder and to life imprisonment without possibility of parole for the kidnaping. They have not appealed.

enter an automobile which had been parked in the service station lot and drove him to another part of the city. During the kidnap ride they took Merrill's wristwatch and wallet, and when they came to a stop Varnum forced Merrill at gunpoint to walk ahead of him to a spot behind a warehouse in a storage yard. According to Varnum's story, Merrill turned suddenly and grabbed him, and in the ensuing scuffle Varnum knocked him down and shot him in the back. The Jacksons heard three shots, and when Varnum returned to the car he told them he had killed the "son of a bitch."

The body was found behind the warehouse the next day. Merrill had died of two bullet wounds in the back which perforated his heart and left lung. The bullets were fired from a single-action .41-caliber revolver, which can be fired only by cocking the hammer before pulling the trigger. Varnum had borrowed the gun earlier in the evening of the killing, and his fingerprint was found on the inside of the stolen car.

At the conclusion of the People's case on the trial of the issue of guilt, Varnum and his codefendants rested without testifying or offering any evidence. The verdict on the guilt issue is clearly supported by the record, and there is no claim to the contrary. ■ Varnum contends, however, that he was inadequately represented by his attorney and in support of this contention relies upon the fact that evidence was presented on the penalty issue which he claims should have been introduced on the issue of guilt.[2]

The evidence introduced at the penalty trial to which defendant refers assertedly tended to show diminished responsibility due to mental illness not amounting to legal insanity. Varnum testified that on the day of the murder he drank whiskey and took about six tablets of benzedrine and seconal but that he knew what he "was doing" and knew that it was "wrong." Dr. Tweed, a psychiatrist testifying for the defense, stated that in his opinion Varnum was not "fully capable" of forming an intent to murder because of his "alcohol-soaked" and drugged mind, that he acted impulsively, and that he did not intend to kill as an "original" matter but "as the situation came he would just act accordingly." There was evidence that three or four years before the homicide Varnum had received treatment for three months at Camarillo State Hospital, a mental institution.

---

[2] Another attorney appointed by this court represents Varnum on appeal.

The record does not show why he was at the hospital or what treatment he received there. The prosecution offered no expert testimony as to Varnum's mental condition.

The charge of inadequate representation is not sustained by the record. It appears that prior to trial Varnum's attorney made an investigation to determine whether the defense of diminished responsibility not amounting to legal insanity was available to his client. On the attorney's motion the court authorized an electroencephalographic study and the engaging of two psychiatrists, Dr. Bielinski and Dr. Tweed. Dr. Bielinski did not testify, and there is no report in the record of the results of the electroencephalographic study.

We have no knowledge of all that was disclosed by the investigation conducted by Varnum's attorney and therefore cannot say what, if any, evidence he should have presented at the guilt trial or what additional evidence, if any, the prosecution might have offered had Dr. Tweed's testimony been presented during the guilt trial. The record shows that the attorney was familiar with the rules governing diminished responsibility due to mental illness not amounting to legal insanity and that he cited *People* v. *Wells,* 33 Cal.2d 330 [202 P.2d 53], and *People* v. *Gorshen,* 51 Cal.2d 716 [336 P.2d 492], in the application made prior to trial for the appointment of psychiatrists. Under all the circumstances, the attorney's decision not to place Varnum and Dr. Tweed on the stand during the guilt trial but to offer their testimony at the penalty trial does not show inadequate representation or a lack of effective aid of counsel in the preparation and trial of the case. (*People* v. *Gaines,* 58 Cal.2d 630, 634 [25 Cal.Rptr. 448, 375 P.2d 296].) It may be noted that in the penalty trial there was evidence that Varnum had committed five armed robberies during the week preceding the murder.

 We have concluded, however, that prejudicial error occurred in the penalty trial.

The prosecutor in his argument to the jury said that the Governor could pardon defendants and "society would not be protected"; that, although it had been said the Governor could not pardon without the recommendation of the Adult Authority, that agency might include someone who did not believe in capital punishment; that a term of life imprisonment "means eligible for parole after seven years"; that, if the jury imposed life imprisonment without possibility of parole for the kidnaping for purposes of robbery with bodily

harm, the prosecutor did not know whether defendants would remain in prison for the rest of their lives; and that the Legislature could change the law and make the amendment applicable to persons previously convicted.

The court instructed the jury that in determining the penalty it might consider the consequences of the possible sentences, that a prisoner serving a life sentence after conviction of first degree murder may be paroled but not until he has served at least seven years, that a prisoner serving a life sentence without possibility of parole following a conviction of kidnaping with intent to commit robbery with bodily harm may not be paroled, but that a prisoner may be pardoned or may have his sentence reduced by the Governor and that the trial judge may also reduce the penalty.

█ The fact that Varnum had been found guilty of kidnaping for the purpose of robbery with bodily harm, an offense for which the penalty is either death or life imprisonment without possibility of parole, affords no ground for departing from the principles established in *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. Permitting the jury to consider the Governor's pardoning power and the trial judge's power to reduce punishment is no less improper in a situation like the present one than in *Morse,* and the statement regarding a convicted murderer's eligibility for parole after seven years is even more inappropriate in this type of situation since the least punishment the defendant can receive under the law relating to kidnaping is life imprisonment without possibility of parole.

█ We held in *People* v. *Hines, ante,* pp. 164, 170 [37 Cal.Rptr. 622, 390 P.2d 398], that any substantial error in a penalty trial is prejudicial. Such error is committed in a case where, as here, there is a substantial deviation from the standards established in *Morse.*

The judgment is reversed insofar as it relates to penalty; in all other respects it is affirmed.

Traynor, J., Peters, J., Tobriner, J., and Peek, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I concur in the opinion and judgment insofar as they relate to adjudication of guilt; but after consideration of the entire record, including the evidence, I am *not* of the opinion that a result more favorable to defendant as to penalty would have been

430

reached in the absence of the error found by the majority. Accordingly, I would affirm the judgment as to penalty as well as guilt. (Cal. Const., art. VI, §§ 4, 4½; *People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [12] [299 P.2d 243]; *People* v. *Morse* (1964) 60 Cal.2d 631, 636 [1a] at p. 653 [36 Cal.Rptr. 201, 388 P.2d 33] ["after examination of the entire cause, including the evidence, we are of the opinion that it is reasonably probable that a result more favorable to defendant as to penalty would have been reached in the absence of the error"]; see also my dissenting opinions in *People* v. *Hines* (1964) *ante,* pp. 164, 175-182 [37 Cal.Rptr. 622, 390 P.2d 398]; *People* v. *Terry* (1964) *ante,* pp. 137, 154 [37 Cal.Rptr. 605, 390 P.2d 381]; *People* v. *Arguello* (1964) *ante,* pp. 210, 215 [37 Cal.Rptr. 601, 390 P.2d 377]; *People* v. *Polk* (1964) *ante,* pp. 217, 235 [37 Cal.Rptr. 753, 390 P.2d 641]; *People* v. *Kroeger* (1964) *ante,* pp. 236, 248 [37 Cal. Rptr. 593, 390 P.2d 369]; *People* v. *Mitchell* (1964) *ante,* pp. 353, 372 [38 Cal.Rptr. 726, 392 P.2d 526].)

McComb, J., concurred.