[Crim. No. 8821.   In Bank.   Aug. 20, 1965.]

In re NATHANIEL GAINES on Habeas Corpus.

William B. Wolfson for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Robert R. Granucci and Jennifer L. Bain, Deputy Attorneys General, for Respondent.

PETERS, J.—This is a petition for habeas corpus urging that a judgment of death must be reversed because, during the penalty trial of petitioner, errors of the type condemned by *People* v. *Morse*, 60 Cal.2d 631 [36 Cal.Rptr. 201, 338 P.2d 33], occurred. It is contended that such errors may be raised collaterally on habeas corpus, that they require a reversal, and that, therefore, the penalty issue must be retried. Under well-settled principles these contentions must be upheld.

The facts are that petitioner was charged with murder in Los Angeles County. The jury fixed the degree as first and determined that the penalty should be death. Judgments were entered accordingly. On the automatic appeal (Pen. Code, § 1239, subd. (b)), this court, in October of 1962, affirmed both as to guilt and the penalty. (*People* v. *Gaines*, 58 Cal.2d 630 [25 Cal.Rptr. 448, 375 P.2d 296].) Certiorari was denied by the United States Supreme Court (373 U.S. 928 [83 S.Ct. 1532, 10 L.Ed.2d 427]). This all occurred prior

to the decision of this court in the *Morse* case, *supra*, 60 Cal.2d 631.

■ There is no doubt that error of the type condemned in *People* v. *Morse, supra,* occurred during the penalty trial of this case. The prosecuting attorney argued at length that life imprisonment does not mean that the defendant will be incarcerated for life, but that it simply means that the defendant will be eligible for parole in seven years; that this factor should be considered by the jurors in determining whether or not to impose the death penalty; that the death penalty should be imposed not because of the individual involved or the nature of the crime, but as a protection to society; that the chances of rehabilitation of defendant were slim; that if released on parole there would be no assurance that he would not kill again; and that the Adult Authority might parole him and the chances were that he would kill again. The death penalty, it was argued, would prevent this from happening. The jury was instructed that: "In making your determination as to the penalty to be imposed, you may consider that the laws of California provide that a defendant sentenced either to death or life imprisonment may be pardoned or have his sentence reduced by the Governor. A prisoner serving a life sentence may be paroled but not until he has served at least seven calendar years."

This is the type of argument and substantially the type of instruction held to be reversible error in *Morse* (*supra*, 60 Cal.2d 631). As was pointed out in *People* v. *Hines*, 61 Cal.2d 164, 169-170 [37 P.2d 622, 390 P.2d 398] (see also *People* v. *Hamilton*, 60 Cal.2d 105, 136-137 [22 Cal.Rptr. 4, 383 P.2d 412], and *People* v. *Terry*, 61 Cal.2d 137, 153-154 [37 Cal.Rptr. 605, 390 P.2d 381]) such error is substantial, it must be deemed to have been prejudicial, and is reversible per se. ■ It has also been held that in death penalty cases such reversible error may be reached in a collateral proceeding on habeas corpus after the judgment has been affirmed on appeal. That was the holding in *In re Jackson*, 61 Cal.2d 500, 505-508 [39 Cal.Rptr. 220, 393 P.2d 420]. The instant proceeding is substantially similar to that involved in the *Jackson* case, and the result reached there must be reached here.

The holding in *In re Lopez*, 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380], to the effect that the *Escobedo-Dorado* type of error cannot be reached retroactively on collateral attack by habeas corpus, in no way limits or qualifies the rule of the *Jackson* case. In *Lopez* we held that the *Escobedo-*

*Dorado* type of error could not be reached retroactively by habeas corpus because the rules of those cases were fundamentally predicated on correcting improper police practices, and should not, therefore, be retroactive. But as held in *Morse, Terry, Hines* and *Jackson, supra,* the type of error here involved goes to the fundamental issue of whether defendant has been afforded a fair trial on the issue of whether he should suffer the death penalty. Such an issue may be raised on habeas corpus after the decision on appeal has become final.

Thus, under well-settled principles, the judgment must be reversed as to the penalty, and that issue must be ordered retried.

■ The next contention, raised in a supplementary brief, is governed by different principles. It is that the judgment as to guilt must also be reversed because the record shows error of the type condemned in *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106].* In that case the United States Supreme Court held that the California constitutional provision permitting comment on the failure of the defendant to testify (Cal. Const., art. I, § 13) was unconstitutional for the reason that it violated the Fifth Amendment to the United States Constitution made applicable to the states by the decision of *Malloy* v. *Hogan,* 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653].

There can be no doubt that error occurred during the trial in this respect. The prosecutor argued at length about the permissible adverse inferences based on defendant's failure to take the stand, and a jury instruction similar to the one condemned in *Griffin* v. *California, supra,* was given to the jury. The question presented is whether or not such error can be raised retroactively on collateral attack by habeas corpus. In other words, is *Griffin* v. *California, supra,* to be applied retrospectively so as to affect judgments final at the time it was decided?

We think not. The error is not of the type that pervades the entire trial so as to deny due process and a fair trial such as was involved in *Gideon* v. *Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733], *Jackson* v. *Denno,* 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908], and similar cases. In fact, it is not even the type of error that is reversible per se. (*People* v. *Bostick,* 62 Cal.2d 820 [44 Cal.Rptr. 649, 402 P.2d 529].)

---

*Decided April 28, 1965.

The problem here involved is controlled by the recent decision of the United States Supreme Court in *Linkletter* v. *Walker,* 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601].* In that case we were told that in determining whether a particular rule was or was not to be applied retroactively we must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." (*Id.* at p. 1738 [85 S.Ct.].) If the rule announced in *Griffin* v. *California, supra,* 85 S.Ct. 1229, be examined in the light of these factors we conclude "that though the error complained of might be fundamental it is not of the nature requiring us to overturn all final convictions based upon it." (*Id.* at p. 1743 [85 S.Ct.].)

Insofar as the prior history of the rule is concerned, historically the courts of this state have relied, previous to *Griffin,* upon United States Supreme Court decisions permitting the court and prosecutor to comment, and the court to instruct, as to defendant's failure to testify. Based primarily on United States Supreme Court decisions which hold that the privilege against self-incrimination is not safeguarded against state action by the Fourteenth Amendment and hence that comments on a defendant's failure to take the stand violated none of his constitutional rights (*Twining* v. *New Jersey,* 211 U.S. 78 [29 S.Ct. 14, 53 L.Ed. 97]; *Adamson* v. *California,* 332 U.S. 46 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223]), the courts of this state have long utilized the 1934 constitutional amendment permitting the court and the prosecutor to comment on the defendant's failure to testify and to advise the jury that it may draw inferences unfavorable to the defendant on that account. (See, e.g., *People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3].) It was not until last year that the United States Supreme Court overruled these prior decisions and held that the Fifth Amendment right against self-incrimination applies to the states through the Fourteenth Amendment. (*Malloy* v. *Hogan, supra,* 378 U.S. 1.)

In *Linkletter* the court emphasized "the reliance placed upon" *Wolf* v. *Colorado,* 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782], by the states. (85 S.Ct. at p. 1741.) *Wolf* was the case overruled by *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933]. In similar fashion we cannot ignore the fact that until very recently the courts of this state applied the comment rule in reliance upon Su-

*Decided June 7, 1965.

preme Court decisions as firmly implanted as the *Wolf* doctrine. We believe that the announced constitutionality of the comment rule prior to *Griffin*, just as the *Wolf* doctrine prior to *Mapp*, is " 'an operative fact and may have consequences which cannot justly be ignored.' " (*Ibid.*)

Although the purpose of *Griffin* was not solely to deter *future* comments or instructions in violation of the Fifth Amendment, neither was *Griffin* directed to the correction of *past* errors to the same degree as those cases which have been retroactively applied. Certainly, the comment rule has not infected trials to the same degree as those errors that the Supreme Court has cured retroactively.[1]

It should also be kept in mind that the limiting rules of California which surrounded the comment rule materially reduced the effect of the comment or instruction on the resolution of the case. Long ago this court severely curtailed the effect of the comment rule by requiring instructions that defendant's failure to deny or explain evidence against him did not create a presumption of guilt or of the truth of the facts, that the prosecution was not relieved from its burden of proving every essential element of the crime and the defendant's guilt beyond a reasonable doubt, and that no inference could be drawn if defendant did not harbor the knowledge necessary to explain or deny the evidence against him. (*People* v. *Adamson, supra,* 27 Cal.2d 478, 489-493; CALJIC Nos. 51, 51-A, 51-B; CALJIC No. 51 (Rev.); see *People* v. *Albertson,* 23 Cal.2d 550, 584-586 [145 P.2d 7] (Traynor J., concurring); *People* v. *Sawaya,* 46 Cal.App.2d 466 [115 P.2d 1001]; 34 Cal.L.Rev. 764; 32 Cal.L.Rev. 317.) Moreover, the jury would in any event often draw an adverse inference whether or not the court commented on defendant's failure to testify, and in some cases the comments might realistically aid the defendant by preventing the jury from attributing unwarranted weight to his failure to testify. Thus, the comment, just as illegally seized evidence, "may well have had no effect on the outcome" of past cases. (*Linkletter* v. *Walker, supra,* 85 S.Ct. at p. 1743.)

Finally, an absolute retroactive application of the *Griffin*

---

[1]*Doughty* v. *Maxwell,* 376 U.S. 202 [84 S.Ct. 702, 11 L.Ed.2d 650] (indigent's right to counsel at trial); *Smith* v. *Crouse,* 378 U.S. 584 [84 S.Ct. 1929, 12 L.Ed.2d 1039] (indigent's right to counsel on appeal); *Eskridge* v. *Washington State Board of Prison Terms & Paroles,* 357 U.S. 214 [78 S.Ct. 1061, 2 L.Ed.2d 1269] (indigent's right to a transcript); *Reck* v. *Pate,* 367 U.S. 433 [81 S.Ct. 1541, 6 L.Ed.2d 948] (coerced confession).

rule would not further the salutary administration of the rule. As the United States Supreme Court said in *Linkletter*, "there are interests in the administration of justice and the integrity of the judicial process to consider." The court continued, "To make the rule of *Mapp* retrospective would tax the administration of justice to the utmost." (85 S.Ct. at p. 1742.) As we said in *In re Lopez, supra,* 62 Cal.2d 368, 381, in which we held that *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *Massiah* v. *United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], did not apply retroactively on collateral attack, "Unlimited retroactive application of *Escobedo* would result in the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many such cases witnesses and evidence would no longer be available. Many hardened and dangerous criminals would glean the greatest profit from unlimited retroactivity; they serve lengthy sentences imposed long ago; their cases thus offer the least likelihood of successful retrial." Since in this state instructions commenting on defendant's failure to testify have been given routinely, unlimited retroactive application of *Griffin* would likewise place an intolerable strain upon the administration of criminal justice.

Moreover, as we said in *In re Lopez, supra,* 62 Cal.2d 368, 382, "The absolute application of new interpretations, which on the surface appears as an instrument of fair play, in reality may stand as a formidable barrier to a dynamic application of constitutional standards." (See Freund, *New Vistas in Constitutional Law* (1964) 112 U.Pa.L.Rev. 631, 637-638.)

For these reasons we hold that *Griffin* v. *California, supra,* 380 U.S. 609, is not to be applied retrospectively to cases that were final prior to the date it was decided.

The writ is granted as to the penalty trial of petitioner. The remittitur issued in Crim. 7007 (*People* v. *Gaines, supra,* 58 Cal.2d 630) is recalled, and the judgment insofar as it imposes the death penalty is reversed. In all other respects the judgment is affirmed. Petitioner is remanded to the custody of the Superior Court of the County of Los Angeles for a new penalty trial.

Traynor, C. J., Tobriner, J., and Peek, J., concurred.

BURKE, J., Concurring and Dissenting.—I concur in that portion of the majority opinion holding that the judg-

ment as to guilt need not be reversed because the record shows error of the type condemned in *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], and that such error cannot be raised collaterally on habeas corpus after the judgment has become final.

I dissent from that portion of the opinion which reverses the judgment imposing the death penalty. In that connection, I would deny the writ for the reasons set forth in the prior opinion of this court in October 1962 when the judgment of conviction of this defendant and the sentence of death were both affirmed after full review and consideration following which the United States Supreme Court denied certiorari (373 U.S. 928 [83 S.Ct. 1532, 10 L.Ed.2d 427]).

The majority base their reversal of the death penalty on *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. In this connection, I refer to the dissent of Mr. Justice Schauer in *People* v. *Hillery,* 62 Cal.2d 692, 714-715 [44 Cal.Rptr. 30, 401 P.2d 382], wherein he pointed out that section 4½, article VI of the California Constitution "peremptorily forbids this court to reverse for mere *error* 'as to any matter of pleading, or . . . procedure,' *whether prejudicial or otherwise,* '*unless,* after an examination of the entire cause, including the evidence, the court shall be of the opinion that *the error complained of* has resulted in a miscarriage of justice.' "

In the instant case, as in *Hillery,* there is no suggestion that there is any doubt whatsoever as to the guilt of this defendant, or the justness of the verdict. Under these circumstances, in *Hillery,* (62 Cal.2d at p. 715) Justice Schauer posed the question, "How then could the majority solemnly hold that the *verdict* in this case works a miscarriage of justice? Absent that holding, the *reversal* works a miscarriage of justice."

See also my dissenting opinion in *In re Lessard,* 62 Cal.2d 497, 513-514 [42 Cal.Rptr. 583, 399 P.2d 39].

McComb, J., and Schauer, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.