[Crim. No. 15290. Second Dist., Div. Two. May 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN BELL JACKSON et al., Defendants and Appellants.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—It was nearly seven years ago that the life of Norman Merrill was taken in a savage murder perpetrated by three predators named Thomas Varnum, John Jackson and Edward Jackson.

The history of this murder case as it relates to Varnum is set forth in *People* v. *Varnum,* 70 Cal.2d 480 [75 Cal.Rptr. 161, 450 P.2d 553], the decision upon the Supreme Court's review of Varnum's third penalty trial which, as in each of the two previous trials, resulted in a jury verdict imposing the death penalty.

In the first trial all three defendants were tried together

and all were found guilty of first degree murder, kidnaping for the purpose of robbery with bodily harm, first degree robbery, and assault with intent to commit robbery. The jury fixed the punishment of Varnum at death for the kidnaping and the murder so that his appeal automatically went to the Supreme Court under subdivision (b) of section 1239 of the Penal Code. The Jacksons were sentenced to life imprisonment for the murder and to life imprisonment without possibility of parole for the kidnaping.

The judgments as to appellants Jackson were reversed by Division Three of this court in an unpublished opinion holding that appellants' constitutional rights had been violated in that their confessions, which had been received in evidence, had not been preceded by the required *Escobedo-Dorado* warnings.

The present appeals are taken by the Jacksons from the judgments of conviction entered upon the verdicts of the jury at the conclusion of their second trial.[1] By the terms of these judgments it was ordered that appellants Jackson be punished by imprisonment in the state prison for the remainder of their natural lives without possibility of parole on counts II and III of the information which charged them with murder and kidnaping for the purpose of robbery and for the term prescribed by law as to count IV which charged them with robbery.[2] The judgments provided that the sentences as to counts II and IV were suspended "until and unless" the conviction on count III "is reversed; at such time, Counts 2 and 4 are to go into effect and are to run concurrently with each other."

The basic facts of the case as they appeared to the Supreme Court from the record of the first trial are indicated by the following quotation from the first decision of the Supreme Court which reversed the judgment against Varnum as to the penalty but affirmed it in all other respects (*People v. Varnum*, 61 Cal.2d 425, 426-427 [38 Cal.Rptr. 881, 392 P.2d 961]) : "On the evening of August 16, 1962, Varnum and the Jacksons, armed with two revolvers, left an apartment house where the Jacksons lived and walked a few blocks, looking for someone to rob. They noticed a service station with only one attendant, approached it, forced the attendant, Norman Merrill, to open the cash register, and removed the money. Fear-

---

[1]Defendants' purported appeals from the orders denying motions for new trial must be dismissed. (Pen. Code, § 1237.)

[2]Count I, charging assault with intent to commit robbery, had been dismissed on motion of the district attorney.

ing that a woman who had just walked into the area might have observed the holdup, they compelled Merrill to enter an automobile which had been parked in the service station lot and drove him to another part of the city. During the kidnap ride they took Merrill's wristwatch and wallet, and when they came to a stop Varnum forced Merrill at gun point to walk ahead of him to a spot behind a warehouse in a storage yard. According to Varnum's story, Merrill turned suddenly and grabbed him, and in the ensuing scuffle Varnum knocked him down and shot him in the back. The Jacksons heard three shots, and when Varnum returned to the car he told them he had killed the 'son of a bitch.'

"The body was found behind the warehouse the next day. Merrill had died of two bullet wounds in the back which perforated his heart and left lung. The bullets were fired from a single-action .41 caliber revolver, which can be fired only by cocking the hammer before pulling the trigger. Varnum had borrowed the gun earlier in the evening of the killing, and his fingerprint was found on the inside of the stolen car. . . .''

In a footnote to the first decision in *Varnum, supra,* at page 426, the Supreme Court noted that the Jacksons had been sentenced to life imprisonment for the murder and to life imprisonment without possibility of parole for the kidnaping but that they had not appealed. However, on May 26, 1965, nearly one year after the filing of the opinion from which we have quoted, and substantially more than a year after the entry of the judgments of conviction, the Supreme Court granted the application of the Jacksons for relief from a late filing of their notice of appeal. (*People* v. *Jackson,* 62 Cal.2d 803 [44 Cal.Rptr. 452, 402 P.2d 140].) Their appeal was thereafter perfected. The judgments as they applied to these appellants were reversed by Division Three of this court as we have recited above.

Since the briefs of appellants and the brief of respondent set forth lengthy statements of the evidence which appear to be substantially consistent and accurate in all material respects, we perceive no reason to burden this opinion with their repetition. The record of appellants' second trial establishes the same basic facts as those proven at their first trial and recited in our quotation from the decision of the Supreme Court.

The first contention advanced by appellants is that the evidence is insufficient to support the judgments convicting them of murder and kidnaping for the purpose of robbery. They

argue that they were not guilty of kidnaping for the purpose of robbery because such kidnaping must be for the purpose of perfecting the robbery, whereas the kidnaping in this case took place contrary to their desires and was not for the purpose of aiding the robbery or their escape. Appellants further argue that they are not guilty of murder because the killing of Merrill was committed by Varnum alone without their knowledge or consent.

■ We reject these contentions. The evidence proves that after Mr. Merrill was kidnaped and forced into the car by the three robbers, Varnum took his watch and Edward Jackson took his money which was added to that which had been taken at the service station and which constituted a part of the loot later divided among the three robbers. The fact that appellants robbed the decedent after they had kidnaped him and still later divided the loot constituted a sufficient basis for the inference that all three robbers were participants in a common plan and design throughout. ■ As stated in *People* v. *Ketchel*, 59 Cal.2d 503, 523-524 [30 Cal.Rptr. 538, 381 P.2d 394] : "Appellants, however, do not recognize the fact that '[r]obbery, unlike burglary is not confined to a fixed *locus*, but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. (*People* v. *Boss*, 210 Cal. 245, 251 [290 P. 881] ; *People* v. *Dowell*, 204 Cal. 109 [266 P. 807].)' (*People* v. *Rye* (1949) 33 Cal.2d 688, 693 [203 P.2d 748].) ■ A 'killing . . . committed in connection with conduct intended to facilitate escape after the robbery and as part of one continuous transaction' constitutes 'murder of the first degree by the terms of the statute.' (*People* v. *Coefield* (1951) 37 Cal.2d 865, 868-869 [236 P.2d 570] ; see *People* v. *Kendrick* (1961) 56 Cal.2d 71, 90 [14 Cal.Rptr. 13, 363 P.2d 13].) " (See also *People* v. *Washington*, 62 Cal. 2d 777 [44 Cal.Rptr. 442, 402 P.2d 130].)

■ Furthermore, it seems entirely clear that the evidence supports the murder conviction by reason of the application of the felony-murder doctrine. As stated in *People* v. *Lookadoo*, 66 Cal.2d 307, 314 [57 Cal.Rptr. 608, 425 P.2d 208], this doctrine applies "whether the killing is wilful, deliberate, and premeditated or merely accidental and whether or not the killing is planned as a part of the commission of the robbery."

■ In short, we hold that the evidence proving appel-

lants' guilt of murder and of kidnaping for the purpose of robbery is not only sufficient to support the verdicts and the judgments but that it is of such overwhelming strength as to eliminate even the faintest shadow of a doubt.

Appellants' contention that the trial court erred in imposing sentence of life imprisonment *without possibility of parole* on the murder count requires no extended discussion. In support of this contention it is argued that the addition of the phrase "without possibility of parole" improperly operates to increase the penalty to one of greater severity than that imposed by the former judgments which were reversed. It is argued also that such addition is unauthorized by the provisions of Penal Code section 190. Respondent argues with some persuasiveness that since this sentence was suspended and by the terms of the judgments remains inoperative "until and unless" the judgments of conviction on the count charging kidnaping for the purpose of robbery are reversed, the issue as to its correctness is rendered moot by an affirmance of the judgments. However, notwithstanding the practical unimportance of the matter, we deem it appropriate to modify the judgments by striking therefrom the phrase "without possibility of parole" only as said phrase relates to the sentence imposed on count II.

In their supplemental brief appellants contend that prejudicial error was committed when the prosecution was permitted to read into the record the testimony given by one John Victoria at appellants' previous trial. Prior to offering this testimony the prosecution proved that Victoria was absent from the State of California and confined in a penitentiary in Santa Fe, New Mexico. The prosecution also offered to introduce an authenticated copy of an order of the District Court of the State of New Mexico reading as follows:

"It is therefore ordered, adjudged and decreed that the Court's order committing the defendant Ashton Victorian to the New Mexico State Hospital in Las Vegas, New Mexico, be set aside and that the defendant Ashton Victorian be committed to the Penitentiary of New Mexico at Santa Fe, New Mexico, where after six months a psychiatric report shall be submitted to the Court to determine whether the defendant Ashton Victorian remains incompetent to stand trial in this cause."

In lieu of reading the foregoing order into the record, counsel for appellant John Bell Jackson offered the following stipulation in which counsel for appellant Edward Jackson

and counsel for the People joined: "Between Mr. Lacey and myself and the People, may it be stipulated that John Ashton Victoria, referred to in this document as Victorian, a simple stipulation, is located in the New Mexico State Penitentiary, has been determined to be an incompetent, and pending a recovery he is to stand trial for certain felonies therein committed in the State of New Mexico."

In the light of this record it appears that the ruling of the trial court admitting the testimony given by the witness Victoria at the former trial constituted a reasonable and proper exercise of discretion. (*People* v. *McCaughan,* 49 Cal.2d 409, 419-420 [317 P.2d 974]; *People* v. *Cavanaugh,* 69 Cal.2d 262, 265-268 [70 Cal.Rptr. 438, 444 P.2d 10]; *People* v. *King,* 269 Cal.App.2d 40, 46-47 [74 Cal. Rptr. 679].)

■ "The question to be determined is whether the proposed witness's mental derangement or defect is such that he was deprived of the ability to perceive the event about which he is to testify or is deprived of the ability to recollect and communicate with reference thereto. . . ."

■ "It is universally recognized that the competency of a witness is to be determined by the trial court in the exercise of its judicial discretion. (*People* v. *Ives, supra,* 17 Cal.2d at 476 [110 P.2d 408]; *People* v. *Harrison, supra,* 18 Cal.App. at 295 [123 P. 200]; see McCormick on Evidence, p. 123.) Manifestly, however, sound discretion demands the exercise of great caution in qualifying as competent a witness who has a history of insane delusions relating to the very subject of inquiry in a case in which the question is not simply whether or not an act was done but, rather, the manner in which it was done and in which testimony as to details may mean the difference between conviction and acquittal." (*People* v. *McCaughan, supra,* 49 Cal.2d at pp. 420, 421.)

■ The trial court was entitled to determine the effect of the adjudication of incompetency by the New Mexico court in the light of the law of that state prescribing the test of competency. As stated in *State* v. *Roybal,* 76 N.M. 337, 338 [414 P.2d 850]: "It is a generally accepted rule that no person shall be called upon to stand trial or be sentenced who because of mental illness is incapable of understanding the nature and object of the proceedings, or of comprehending his own condition in reference thereto, or of making a rational defense. . . ."

Further, as pointed out in McCormick on Evidence (1954) at page 494: "If the person is proved to have become insane

since the former testimony was given, it seems that the admission of the earlier testimony should depend not on whether the subsequent insanity has rendered the witness incompetent, but whether having in mind the witness's later loss of mental powers the previous testimony is probably substantially more reliable than the present testimony of the insane person would be, a question upon which some discretion must be conceded to the trial court.''

 The fact that appellants had been accorded their right of confrontation and that their counsel had cross-examined the witness at length during the former trial are relevant facts providing additional support for the trial court's exercise of its discretion.

We have considered the additional arguments and contentions set forth in appellants' supplemental brief and reject them on the basis of our holding that they are patently unmeritorious and lacking in sufficient substance to require further discussion. Although the point has not been raised by counsel, we deem it proper to strike the sentences imposed on count IV since the robbery therein charged constituted an essential element of the other two crimes of which appellants were convicted. (Pen. Code, § 654.)

Each of the judgments is modified by striking therefrom the phrase ''without possibility of parole'' insofar as said phrase relates to the sentence imposed on count II of the information, and by striking the sentence imposed on count IV, and as thus modified the judgments are affirmed, and the appeals from orders denying motions for new trial are dismissed.

Roth, P. J., and Wright, J., concurred.