[Crim. No. 3681. First Dist., Div. One. Jan. 27, 1961.]

THE PEOPLE, Respondent, v. RICHARD EVAN GIBBS et al., Appellants.

[Crim. No. 3704. First Dist., Div. One. Jan. 27, 1961.]

THE PEOPLE, Respondent, v. CHARLES GEORGE HEN-DRICKS, JR., Appellant.

Thomas F. Stack and John J. McLaughlin, under appointment by the District Court of Appeal, for Appellants.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

TOBRINER, J.—In the special circumstances of this case appellants fail in their contentions that they were improperly deprived of the protection of their personal pleas of not guilty of burglary because of the court's reduction of the issue to one of commission of first or second degree burglary. The record shows their adoption of their counsel's stipulation and strategy thus to narrow the issue. In the face of appellants' admissions, as well as the stipulation, they likewise fail to

demonstrate prejudicial error in the court's instructions to the jury so defining the question for its determination.

We first outline the factual background of the case. In the early morning of March 2, 1959, Officer Frederick Marcus of the Sheriff's Office of the County of Marin, while patrolling in the area of Tamalpais Valley, noticed a light shining from the Shoreline Market. Upon investigation he discerned a man moving inside the store; he radioed for help. The ensuing police encirclement of the store led to the apprehension of appellants and the discovery of appellant Kot, who was lying "in the drain" on the roof of the building. The officers obtained two coats worn by appellants; appellants Hendricks and Gibbs admitted their ownership of the coats. The officers found no weapons on the persons of the appellants.

Subsequent to the arrest of the appellants, the officers came across two guns, fully loaded, inserted in the drainpipe on the roof. One was a .38 revolver, and the other a .25 automatic. During the trial a state criminologist testified that flakes and fibers of paint in the pockets of the two coats resembled flakes and fibers of paint on the guns. Both at the police station following the arrest and at the trial, however, appellants denied possession of any weapons during the burglary.

Upon being charged with the offense of burglary, all three appellants, at the ensuing trial, testified. Hendricks admitted he "attempted" the burglary, admitted a prior conviction for robbery, admitted wearing one of the coats, but denied ever having had a gun in the pocket of the coat. Gibbs, on cross-examination, admitted that his purpose "was to try to get in the safe and take the money out," admitted entering the store, admitted a prior burglary conviction, admitted wearing one of the coats, denied having possession of a gun during the burglary. Kot admitted being at the market and making an entry into the building, but denied possession of any weapons.

The trial judge stated to the jury that "[t]he case was tried from the beginning . . . to the end, on the theory that these men . . . admit they were at certain places at certain times, and did certain things." The judge alluded to the absence of any question "about their guilt of the crime of burglary," stating that "[i]t is the degree of burglary, first or second, that you are to determine." Counsel for both prosecution and defense stipulated that the judge's statement properly framed the issue. Accordingly the court pointed out that "the verdict forms when delivered to you will be all in the guilty form.

. . .'' The court instructed that if the jury should find that any of the appellants ''were armed with a deadly weapon'' at the time of the commission of the burglary, the burglary would be of the first degree.

The jury returned verdicts of burglary in the first degree against each of the appellants. Defense counsel moved for a new trial upon the ground that the failure to submit to the jury the not guilty form of verdict constituted prejudicial error. The court denied the motion and entered judgment against each defendant.

We are indebted to court-appointed counsel for a frank and lucid presentation of the issue of the case. Counsel summarizes the evidence in this fair statement: ''The evidence presented by the People to support the charge of Burglary was overwhelming. Although there existed a substantial conflict in the testimony as to the degree of guilt, witnesses for the People placed appellants at the scene of the crime at the indicated hour and further established, from the lips of the appellants themselves, that they had sawed a hole in the roof of the store in the nighttime with the intent to commit larceny therein.'' He proceeds to project the issue: '' [B]y entering their plea of Not Guilty, appellants urge that it was not for the Trial Judge, nor the District Attorney, nor the County-appointed Public Defender to waive their rights under their Not Guilty plea and leave solely for the factual determination of the jury the degree of their guilt.''

The issue separates into two subsidiary questions: (1) Did appellants' attorney's ''waiver'' transform the not guilty pleas into guilty pleas and thereby improperly deprive appellants of the protection of Penal Code section 1018 which states: ''Unless otherwise provided by law every plea must be put in by the defendant himself in open court''; (2) did the court's statement to the jury that ''it is only the question of first or second degree burglary that you are concerned with,'' its acceptance of appellants' counsel's stipulation that this was the issue, its failure to submit to the jury a not guilty form of verdict, improperly deprive appellants of a jury determination of their actual guilt or innocence?

Appellants' first contention as to their deprivation of the right to a personal plea by their counsel's stipulation succumbs to appellants' waiver of the right by their adoption of their counsel's statement of their plea.

The nature of the right provided by Penal Code section 1018 is not such that the plea must be expressed in person

under any and all circumstances. ■ As the Supreme Court has recently stated in *In re Martinez* (1959), 52 Cal.2d 808, 815 [345 P.2d 449] : "The purpose of the requirement that a plea be entered by defendant personally is to ensure that the plea is his own. If it is, the purpose of that requirement is accomplished. . . ." The Supreme Court proceeds to discuss two cases (*In re Breen* (1958), 162 Cal.App.2d 235 [328 P.2d 465] ; *In re Brain* (1924), 70 Cal.App. 334 [233 P. 390] ) in which judgments were reversed because "the plea was entered by defendant's counsel in defendant's presence and without objection by him." (*Idem.*) Disapproving those cases "to the extent that they hold that a judgment must be vacated even if the defendant authorized or adopted counsel's statement of his plea," the court states the appellate "court should not have declared the judgment void without determining that the defendant had not authorized or adopted counsel's statement of his plea." (*Idem.*)

Earlier cases do not establish a different rule from Martinez. Although in *People* v. *McCrory* (1871), 41 Cal. 458, the court used general language: "A plea confessing himself to be guilty of crime should not be entered except with the express consent of the defendant, given by him personally, in direct terms, in open Court" (p. 461), the case involved the refusal of the trial court to permit defendant to withdraw his plea of guilty to murder in the second degree. That plea had been entered by defendant's attorney because of the effect of the absence of defendant's witnesses, and, although defendant "inclined his head in a manner indicating his assent" (p. 459), there was some doubt about the nature of the consent. The court stated: "But when there is reason to believe that the plea has been entered through inadvertence, and without due deliberation, or ignorantly, and mainly from the hope that the punishment, to which the accused would otherwise be exposed, may thereby be mitigated, the Court should be indulgent in permitting the plea to be withdrawn." (P. 462.)

The later case of *People* v. *Manriquez* (1922), 188 Cal. 602 [206 P. 63, 20 A.L.R. 1441], specifically limited McCrory. To the court's question of the plea, defendant's attorney answered, " 'The plea is guilty to the charge of murder' " (p. 604) ; defendant, through his interpreter, stated: " 'I have been guilty all the time.' " (P. 604.) The court held: "The statement was a direct and explicit confession of guilt and was properly received by the court and entered as the plea in the case. The form of the plea is not of vital importance,

provided the admission of guilt is clear, definite, and unconditional. (16 C. J. 401.)'' (P. 605.)

The language of *People* v. *Davis* (1957), 48 Cal.2d 241 [309 P.2d 1], requiring the consent of the defendant to any plea, does not conflict with Martinez; the court says, ''Whatever trial strategy or tactics an attorney may employ in the defense of an accused he may not enter a plea of guilty to a felony without the consent of his client. (Pen. Code, § 1018.) 'It is a violation of his duty of fidelity to his client to assume a position adverse or antagonistic to him without the latter's free and intelligent consent after full knowledge of all the facts and circumstances.' (*Anderson* v. *Eaton,* 211 Cal. 113, 116 [293 P. 788].)'' (P. 256.)

The record in the instant case does not permit any other conclusion than that appellants did consent to, and adopt, their counsel's statement of their pleas. At the very outset of the trial appellants' counsel said, ''The defendants are going to admit that they went to this Shoreline Market and they made an attempted burglary.'' Counsel limited the question for the jury to whether appellants were guilty of first or second degree burglary, pointing out that ''the mechanics of the law'' required the not guilty plea since appellants had ''no means . . . of distinguishing one type of burglary from another type of burglary.'' Counsel, indeed, completed his statement by saying, ''We will admit, however, we attempted the burglary. . . .''

The record shows that appellants adopted counsel's position. Counsel made his statement on the first day of trial; on the afternoon of the second day (Wednesday, May 6, 1959), when appellant Gibbs took the stand, his counsel asked him, ''And you have sat here now through a day and a half, approximately, of testimony. Are you familiar generally with the evidence and the events which have been testified to . . . ?'' Gibbs answered, ''Yes, I am familiar with what was said here in Court, yes.'' In like manner appellants' counsel asked appellant Kot, ''Mr. Kot, you have sat here now for a day and half [*sic*] or two days and you have heard the testimony concerning a burglary, or attempted burglary, of the Shoreline Market. Do you recall whether on the night of March 1, or early morning of March 2, you were there present at that Shoreline Market?'' Kot answered, ''I do.'' Such testimony fails to show any repudiation of the opening statement of appellants' counsel; it indicates the opposite. Moreover, the testimony of all three appellants followed the

pattern which their counsel had marked out: They admitted the attempted burglary; they denied possession of the weapons.

In addition to the acquiescence above set forth, appellants, before the case went to the jury, on the third day of trial, apparently again consented to their counsel's stipulation as to the issue which the jury was to decide. Both appellants' and respondent's counsel agreed to the statement of the court which we have set out *supra* and which concluded: "No question, therefore, about their guilt of the crime of burglary. It is the degree of burglary, first or second, that you are to determine." The apparent consent of appellants to this stipulation of counsel completes a three-day sequence of events predicated upon an agreed strategy that appellants would not press the issue of their innocence of the burglary. The whole structure of appellants' defense, and, indeed their testimony, rests upon a foundation of an admission of their guilt of attempted burglary and their consent to or adoption of their counsel's plea that the sole issue turned upon a question of degree of burglary.

■■■ Appellants' second point objecting to the court's instruction to the jury that the issue was one of degree, and to the court's acceptance of the stipulation of appellants' counsel so stating, can stand only if the court committed both error and prejudicial error.

Turning to the effect of the stipulation, it binds appellants only if it were authorized or adopted by them. We have set forth *supra* the tenor of the whole record which supports the proposition that appellants adopted such a presentation of their case. Under such circumstances the court's acceptance of the stipulation would not constitute error.

The courts have, as a general proposition, held that parties are bound by the stipulations offered by their counsel in the course of trial. The history of the accused's right to representation by counsel in criminal proceedings indicates one reason for this approach. The right to representation by counsel matured only after long struggle and debate in early English criminal law. Originally, defendants enjoyed no such right; persons charged with treason or felony against the Crown faced the awesome task of defending themselves. A slight relaxation of this rule occurred in the late fifteenth century when counsel were allowed to argue points of law. This "liberality" rendered little practical benefit to one unskilled in law, for the burden lay upon the defendant to propose the point of law; only if the court thought the point

worthy of debate did it assign counsel to argue the issue. In 1696, the defendant in a prosecution for treason won the right to counsel, but it was not until 1837 that this right was extended to a defendant charged with a felony. (Plucknett, A Concise History of the Common Law [4th Ed.], p. 410; Carson, The Right to Counsel in a Criminal Case; 30 American Law Register (Univ. of Penn. L. Rev.) (1882), pp. 625, 626.)

In the United States the earliest state constitutions provided to one accused of crime the benefit of counsel (30 American Law Register, *supra,* pp. 625, 634). And this right was embodied in California's first Constitution. (Cal. Const. 1849, art. I, § 8.) Concomitant with this right, and as a necessary element in the utilization of another as his advocate, lies the principle that during the trial, the defendant is bound, unless it appears otherwise, by the actions of his counsel.

Thus the courts presume that an attorney is authorized to enter into a stipulation offered in open court in a party's presence, without interjection of the party's objection. In *People* v. *Wilson* (1947), 78 Cal.App.2d 108 [177 P.2d 567], the court rejected defendant's contention that her attorney lacked authority to stipulate that certain persons died because of injuries suffered in an accident in which defendant was involved, upon the ground, "Defendant was present and heard her attorney enter into the stipulations. She at no time objected thereto nor sought to be relieved therefrom, nor did her attorney make any such request in her behalf. No contention is advanced that the stipulations were not in accordance with the facts." (P. 119.) It further pointed out, "When the stipulations were made in her presence and the terms and import of them were fully understood by her, their binding force did not rest upon the authority of the attorney derived from the attorney and client relationship, any more than it did upon her consent thereto, which was evidenced by her silence." (P. 120.)

Many other cases illustrate the principle: *People* v. *Hart* (1953), 121 Cal.App.2d 301 [262 P.2d 865] (stipulation in defendant's presence that the case be tried on the transcript of evidence taken at a preliminary examination and that defendant waived confrontation and cross-examination of witnesses upheld); *People* v. *Ward* (1953), 118 Cal.App.2d 604 [258 P.2d 86] (stipulation that the court consider evidence introduced in the trial of a codefendant for the purpose of fixing degree of the crime in regard to this defendant upheld);

*People* v. *Kobey* (1951), 105 Cal.App.2d 548 [234 P.2d 251] (stipulation to discharge a juror and choice of a successor upheld).

Thus the history of the law and the cases combine with the record here to preclude appellants' contention that their attorney's stipulation deprived them of an essential right. Their repeated acceptance of the counsel's presentation of the single issue and their own conforming testimony of admission negates their present assertion that the court erroneously narrowed the issue.

Assuming, however, the court's instruction was erroneous, we cannot find that it prejudiced appellants. Appellants contend the prejudicial effect of the court's procedure lies in the removal from the jury of the issue of "innocence of the crime charged." Appellants assert, "The trial judge, by extinguishing the latter choice on a directed verdict of Guilty contrary to law, made much more believable the circumstantial evidence of the People relating to the degree of guilt." This, indeed, is a nebulous cloud of prejudice. We can hardly understand how the fact the jury did not ponder innocence or guilt of the crime itself would somehow prejudice appellants upon the issue as to their possession of a gun. Proof that appellants possessed the weapons and proof of guilt of the crime of burglary, which appellants, indeed, admitted, are separate and different.

Appellants' admissions once more become fatal to appellants' contentions of prejudice. While appellants correctly assert that the trial court must not assume the guilt of the accused or use any language from which the jury might derive an inference of the judge's view on that issue (*People* v. *Howland* (1910), 13 Cal.App. 363 [109 P. 894]; *People* v. *Black* (1957), 150 Cal.App.2d 494 [310 P.2d 472]), and that instructions must not assume the existence of proof of facts or the guilt of the defendant (*People* v. *Williams* (1860), 17 Cal. 142; *People* v. *Peterson* (1946), 29 Cal.2d 69 [173 P.2d 11]), a defendant suffers no prejudice by the limitation of the issue to the jury to the question of degree in the face of defendant's admission of the commission of the crime. Thus in *People* v. *Caetano* (1947), 29 Cal.2d 616 [177 P.2d 1], no question arose as to the defendant's homicide of his wife but only as to the degree of murder; defendant "claimed that the court erred in giving an instruction which improperly assumed the commission of a homicide" and in thereafter defining first degree murder. The court said, "It was estab-

lished without dispute that defendant killed his wife, and he was, therefore, in no way prejudiced by the assumption in the instruction that a homicide had been committed.'' (P. 618.)

In short, appellants here adopted counsel's statement of their plea, and they admitted the commission of acts which left as the only issue that could properly or honestly be presented to the jury the question of the degree of the offense. Appellants' admissions of the burglary and their consent to the narrowing of the issue rendered a personal oral plea under Penal Code section 1018 a ritualistic formality, which they themselves waived. The court's acceptance of their position, and the consequent instruction to the jury that the issue was one of degree, necessarily resulted from the admissions and the consent. Under such special circumstances the court did not commit error, and, in the glaring light of appellants' admissions of the burglary, did not prejudice their deliberately limited defense. As important as it is to protect the substantive rights of defendants in criminal proceedings, it is equally imperative not to denigrate the substance of those rights into the shape of sterile formalism.

We affirm the judgments.

Bray, P. J., and Duniway, J., concurred.