[Crim. No. 125.   Fifth Dist.   Mar. 22, 1965.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  MARVIN
BLYE,  Defendant  and  Appellant.

144

Kenneth L. Maddy, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—On this appeal, the defendant, Marvin Blye, contends that he was deprived of any chance to present a defense by virtue of actions of his appointed attorney, the Public Defender of Stanislaus County, contrary to his own wishes and at least in one major instance over his virtual objection as established by the record. It is indicated that he was an escapee from a mental institution near Spokane; that he had "thumbed" a ride from the State of Washington to Modesto on his way to southern California; that the night came on and that he was sick and short of money, and that he became "angry at the world." It is claimed that he indulged in three preceding down-town burglaries, the chief gain to him being five cookies from a bakery, which he ate on the street; and that he finally kicked in a plate glass window of a pawn shop known as Unclaimed Luggage Sales and Loans and took three used wrist watches from a tray in the window. This last entry, and two of the other alleged illegal entrances to stores, were charged as burglaries. The counts relative to the two additional entries were dismissed prior to trial, but the alleged burglary which resulted in the stealing of the watches brought about his conviction and incarceration in the state prison.

In the process of kicking a hole in the plate glass window, the defendant severely cut his left ankle; when he was apprehended in a bar nearby he was bleeding profusely; the police testified that they traced the progress of the defendant

between the point of the commission of the crime and his place of arrest from blood stains on the sidewalk.

Pursuant to repeated examinations by various members of the police department, apparently without any warning that he had a constitutional right to remain silent and that he was entitled to the services of an attorney, the defendant admitted finally that he had broken the window and had stolen the watches, intimating at one time that he had decided to do something of the kind to provoke an arrest.

The Public Defender of Stanislaus County was appointed to represent him at the trial. When Mr. Blye first appeared in court, the presiding judge conceived a doubt as to his existing sanity, and appointed two Modesto doctors to examine him; they reported that the defendant was not legally insane at that time and that he was able to carry on his own defense.

Thereafter, the defendant refused personally to enter a plea, and the court, after consultation with the defense attorney, directed the clerk as to each count to enter a plea of ''not guilty'' and a plea of ''not guilty by reason of insanity.'' Thus, the defendant did not personally enter the plea of ''not guilty by reason of insanity.'' Whether that makes a difference technically may be the subject of diverging opinions, but in the judgment of this court it should not make any difference, inasmuch as the pleas once entered were in fact existent and viable; in our opinion, a defendant in those circumstances had the same right to a continuance of the formal status of the pleadings as if he had correctly entered such pleas personally. (See *People* v. *Merkouris,* 46 Cal.2d 540, 551 [297 P.2d 999].)

In any event, the plea of ''not guilty by reason of insanity'' was later withdrawn by his attorney contrary to the wishes of the defendant, as indicated in the record, and the question to be determined is whether or not when a trial has been initiated with a plea of ''not guilty by reason of insanity'' the attorney for the defendant may abandon that defense, contrary to the wishes of the defendant himself as expressed in the record.

The prosecution, relying upon the majority opinion in the case of *People* v. *Gaines,* 58 Cal.2d 630 [25 Cal.Rptr. 448, 375 P.2d 296], maintains that the attorney for the defendant had a right to withdraw the plea of ''not guilty by reason of insanity'' on the general theory that a defense attorney has the unquestioned choice of conducting the case as he sees fit and that whatever he says is binding on the de-

fendant himself. However, the court provided room in the majority opinion for the exception which exists here. On page 636, it is stated: "In the absence of a statute requiring that the withdrawal of a plea of 'not guilty by reason of insanity' be made by a defendant himself, *or the presence of some compelling circumstance not shown here,* we should not depart from the customary practice by which an attorney acts for his client throughout the trial." (Italics added.)

It is further noted on the same page: ". . . in the present case no claim is made by defendant that his attorney lacked authority to withdraw the plea."

Here, there exist "compelling circumstances" not shown in the *Gaines* case; and it is apparent from the supplemental reporter's transcript that the defendant did not authorize his attorney to withdraw the plea, but opposed such a move. After the appointed attorney for the defendant asked leave of court to withdraw the plea of "not guilty by reason of insanity" on the ground that he had no readily available testimony to present, and on the further ground that the appointed doctors had filed reports showing that the defendant was not presently insane, and indicating that, if they were called to the witness stand in the insanity trial, they would testify that, in their opinion, he was not insane at the time of the alleged crime, the court saw fit to address Mr. Blye; the following proceedings took place:

"THE COURT: . . . Now, Mr. Blye, you heard what your attorney has said here. As you recall, you refused to enter a plea and I entered a plea of not guilty for you to protect your rights, and then your attorney in a further effort to protect your rights, without your approval but with my consent, entered the further plea of not guilty by reason of insanity, and I appointed two additional psychiatrists to examine you at that time. The two additional psychiatrists that I appointed were Dr. Gallup, and Dr. O'Brien, both of the Modesto State Hospital, and it is true that they have both filed their reports stating, in their opinion, you are sane and were sane at the time of the commission of the act for which you are on trial. It is also true, as Attorney Hancock said, that on an entry of a plea of not guilty by reason of insanity that the burden of proof is on you that you are legally insane. Now, in view of the fact that we have these reports of these psychiatrists that you are sane, were sane at the time this act was committed, I would be disposed to grant your attorney's request to withdraw that plea, but I would like to hear from you before I do that.

"THE DEFENDANT: I've been in two hospitals for the last three years and they ain't got none of my hospital records or reports or no recommendations from my doctors from either of the two hospitals. I'm a very upset person and I'm sick. I know I'm sick and I know that I need medical attention and I should be on medicine right now for my condition and there ain't nobody going to tell me different because I know I'm sick.

"THE COURT: Well, all right, but the question—your attorney has entered this plea in an additional effort to protect your rights, but he's the one that entered the plea in your behalf, you didn't. Now he's explained the situation. He's got no evidence to support that plea and he desires to withdraw the plea.

"THE DEFENDANT: Why don't they get my hospital records down here, or the doctors from the hospitals down here to prove that I am sick?"

It was further shown at the time that defense counsel had not received final letters from the two mental institutions where the defendant stated that he had been confined in Washington and Utah specifying his treatment there, inasmuch as he had apparently used a different name when he was incarcerated in those institutions. The attorney appointed by the court seemed to think that no matter what the official records showed in the other two states, they could not be admitted in evidence. However, this was probably an error. (Uniform Business Records as Evidence Act, Code Civ. Proc., § 1953e et seq.) In any event, the court took it upon itself to follow the request of the defense attorney rather than to take cognizance of the wishes of the defendant himself. The defendant was thus denied an opportunity to attempt to establish one of his pleaded defenses, and in the circumstances here proven, it was a fundamental error for the court to permit an erasure of the plea contrary to the defendant's wishes.

Another error complained of is that immediately after his attorney announced that the defendant rested without taking the stand or calling any witness in his own behalf, a court session was held in the chambers of the judge in the absence of the defendant; at that time, the following proceedings occurred:

"THE COURT: Let the record show that this is a conference in the Judge's office attended by the Deputy District Attorney Pendergrass, Mr. Hancock, attorney for the defendant, and the Court.

"Do you desire to make a statement at this time, Mr. Hancock?

"Mr. Hancock: Yes, Your Honor. I would like to state for the record and in the presence of the Court and the prosecution that I have on numerous occasions attempted to communicate with this man [the defendant] and I have been more or less unsuccessful in doing so. I have, at the conclusion of the Prosecution's case, after they had introduced evidence that the man was caught near the scene of the crime; that a trail of blood was followed from the man to the scene of the crime; that he had in his possession some articles taken from— taken in the burglary which were identified as having been taken in the burglary; that he admitted to police officers on more than one occasion that he had broken this window and had taken the articles, namely, watches; that after this I had — and after he had also apparently told some of the police officers that he was mad and that he had escaped from a mental institution, and that he did this in order to get arrested, I had asked him if he wanted to take the stand and explain why he did this. He stated that he did not take— that he would not take the stand and admit that he had done it. That if he took the stand, he would deny that he had broken into the place and taken anything from there.

"I feel that under all the circumstances and the evidence which has been produced, that it would be unwise and perhaps unethical for me to allow this man to take the stand and obviously perjure himself. I do not feel that it would further his cause in any way and I therefore do not intend to call him as a witness, and there is no other evidence which I have to offer in this case."

It is unnecessary to discuss the legal ethics involved in a full disclosure to the court and prosecuting counsel of the elements of a private conference between the defendant and his attorney such as is illustrated here. (Bus. & Prof. Code, § 6068, subd. (e).) It will be sufficient to remark that no such proceedings were permissible under any circumstances in the absence of the defendant. (Cal. Const., art. I, § 13; Pen. Code, §§ 1043, 1181, subd. 1; Witkin, Cal. Criminal Procedure, Trial, § 388, p. 385.) During the defendant's absence, these proceedings established for the record that the appointed attorney for the defense did not see fit to permit the defendant to take the witness stand in his own defense on the basic ground that he disbelieved in advance what the defendant would say with regard to the alleged burglary.

If defense counsel, notwithstanding that this was a criminal case (Bus. & Prof. Code, § 6068, subd. (c)), felt that he could not in any sense vouch for the testimony of his client and that to permit him to state the facts as he saw them would be to approve perjury, the attorney could have requested the court to grant him leave to withdraw from the case and to appoint some other attorney to represent the defendant.

We do not seek to abrogate the well-established rule that once an attorney appears and acts for a defendant in the trial of a case, it is his duty to follow his own best judgment as to what should be done in the litigation except as to certain basic rights such as the entry of a plea or the right to a jury. (*People* v. *Gibbs,* 188 Cal.App.2d 596, 603-604 [10 Cal.Rptr. 581]; *People* v. *Merkouris, supra,* 46 Cal.2d 540, 554; *In re Atchley,* 48 Cal.2d 408, 418 [310 P.2d 15].)

But if the record shows that a defendant makes proper and timely demand to take the stand contrary to the advice given by his counsel, such a defendant has the right to give an exposition of his defense before a jury. This insistence may be fatal to his chances of acquittal, but to prevent him from doing so, if the record adequately shows his firm desire to testify, would be to deny him a right that every defendant should have in a criminal case. In such circumstances, a defendant should first request the court to remove his attorney and substitute a new lawyer or the defendant in person. (*People* v. *Jackson,* 186 Cal.App.2d 307, 315 [8 Cal.Rptr. 849].) Here, the record does not show affirmatively that the defendant effectively demanded the right to take the stand against the advice of his attorney, and the judgment, therefore, cannot be reversed on that ground.

But by not being present during the proceedings in the judge's chambers, the defendant may well have been deprived of an opportunity to object to his exclusion from the witness stand; and it is certain that he was not fairly treated by being subjected, in his absence, to what was said by his counsel to the court and the prosecuting attorney. The test of the effect of absence of a defendant during part of a criminal trial is whether or not he was damaged (*People* v. *Teitelbaum,* 163 Cal.App.2d 184, 207-208 [329 P.2d 157]) or prevented from having "a fair and just hearing of his case" (*People* v. *Leyva,* 187 Cal.App.2d 249, 256 [9 Cal. Rptr. 469]). We would be creating a dangerous and unwarranted precedent if we were to hold that a

criminal defendant is not damaged, or deprived of a fair hearing, by his absence at a recorded meeting of the court and counsel during which his attorney exposes in detail his conferences with the defendant and also indicates his belief that he is guilty. Unlike the situation disclosed in *In re Lessard,* 62 Cal.2d 497, 506 [42 Cal.Rptr. 583, 399 P.2d 39], defendant's absence here bore a ". . . reasonable substantial relation to a full opportunity to defend himself" and impaired his ". . . right to a fair trial."

In the words of Chief Justice Traynor in his dissenting opinion in *People* v. *Gaines, supra,* 58 Cal.2d 630, 641: "Counsel's withdrawal of the plea of not guilty by reason of insanity removed a legal excuse for the crime and was in effect a plea that 'whereas before I pleaded that I did not do this act, but if I did, I am to be excused, now I plead that I did not do this act, but if I did, I have no excuse."

And in the circumstances shown by the record, the defendant did not produce any evidence to support his plea of "not guilty." All things considered, we do not believe that he had a fair trial.

This belief is further strengthened by the state of the record relative to his alleged confession to the police. The appellant does not raise the question whether these confessions should have been received in evidence under the principles enunciated in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 109, 398 P.2d 361], and *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. Nevertheless the Attorney General sees fit to discuss certain phases of that question. We do not believe that it would be proper for us to discuss this showing by the Attorney General at this time as the case will have to be retried and the record in the second trial may differ materially from the present reporter's transcript. There will doubtless then be a careful consideration by court and counsel of the impact of the *Dorado* and *Escobedo* decisions; we assume that adequate objections will be made and the entire surroundings of the confessional statements will be brought to the attention of the trial court.

For the reasons given, the judgment is reversed.

Brown (R.M.), J., and Stone, J., concurred.