[Crim. No. 11571.   Second Dist., Div. Two.   Apr. 26, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GLENN MELVIN BAKER, Defendant and Appellant.

Michael B. Spizer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J. — On December 30, 1964, appellant was charged by information with murder in violation of section 187 of the Penal Code. Two prior convictions for felonies were also alleged.

On January 8, 1965, appellant pleaded "Not Guilty" and denied the priors. On May 20, 1965, appellant entered the additional plea of "Not Guilty by Reason of Insanity" (Pen. Code, § 1016) and two psychiatrists were appointed by the court pursuant to Penal Code, section 1027, to examine and investigate appellant's sanity. Each reported appellant was sane prior to the trial. On May 25, an additional physician, Dr. Marinacci, was appointed under Code of Civil Procedure, section 1871, to conduct an electroencephalogram on appellant. This report was also made prior to the trial.

On July 12, 1965, the cause was called for trial. At bench, contending counsel and appellant being present, the following exchange occurred:

"THE COURT: The record will show these proceedings are had out of the hearing of the prospective jurors.

"I understand it's your desire to admit the priors alleged?

"MR. ROSENSTOCK: Yes, your Honor.

"THE COURT: All right. It's alleged here, Mr. Baker, that before this Information was filed, you were convicted on or about the 30th day of January, 1959, in the Superior Court of Contra Costa County, of the crime [sic] of forgery and burglary.

"Do you admit or deny those priors as alleged?

"THE DEFENDANT: I admit them.

"THE COURT: Now, there's a plea of not guilty by reason of insanity. The doctors' reports have been returned to the Court. Both doctors say that at the time of the commission of

the offense your client was sane. Do you want to stand on the plea of not guilty by reason of insanity, or withdraw it?

"Mr. Rosenstock: At this time we will withdraw it, your Honor.

"The Court: Very well."

Appellant was found guilty of first degree murder and sentenced to life imprisonment.

On the afternoon of November 12, 1964, appellant shot and killed Irvin Luther Twilley at the home of Ronald Robinson, appellant's brother-in-law, in Paramount. At the time of the shooting, appellant's wife Sylvia, his stepdaughter, and two of his wife's brothers and their wives were present in the house. After the shooting, appellant fled and was later picked up by police in Utah.

The facts are essentially undisputed. Appellant shot Twilley because he suspected Twilley of being in love with his wife, Sylvia, and feared she would leave him for Twilley. At the time of their marriage, Sylvia had eight children by a previous marriage. They both knew Twilley prior to the marriage and even then, appellant was jealous of Twilley's attentions to Sylvia. About a year before the fatal shooting, and prior to their marriage, appellant, at the home of Sylvia, was arrested because of a fight with Twilley.

Twilley had a reputation as a fighter and appellant was physically afraid of him. Twilley was a fugitive from justice in Alabama, and was also wanted by California authorities. Appellant, to keep Twilley away from his wife, had informed police of Twilley's whereabouts and Twilley was subsequently sent to jail. Appellant knew that Twilley was due to be released from jail around October or November of 1964, and feared retaliation.

On November 10, 1964, appellant and Sylvia (at the home of his brother-in-law Robinson) had an argument in respect of appellant's fears that he was not doing enough for her and her children. Appellant voiced his suspicion that she would leave him when Twilley got out of prison. He told Sylvia they ought to move to northern California where he would get a job and take care of her and her family. Twilley would be unable to find them in northern California when he returned from prison. After the argument, appellant slept in his car. The next morning, he wanted to "make up" with his wife and went looking for her without success. He then picked up his paycheck and used all the money to buy Christmas gifts for his wife and the children, and brought them to the Robin-

son house where Sylvia was staying with her children. She was not there. He left the gifts and spent the rest of the day searching for her.

That night (November 11), he slept again in his car. Sometime around noon on the 12th, appellant returned to the Robinson house. His wife and Twilley were both there; appellant heard his stepdaughter say: "Don't let him in, Irvin's here." When appellant greeted Twilley, the latter just "smirked." Appellant wanted to talk to Sylvia, but as there were others present, he merely asked her for the pink slip to his car. She said she did not have it. As appellant was leaving the house, his stepdaughter, pointing to the pile of Christmas gifts, said, "There's some things there I think you better take with you."

Appellant was greatly upset—he felt "things were all over between her and I." He went to a friend's house in Bellflower and asked his friend's wife for a rifle. Not getting one, he went to a sporting goods store in downtown Bellflower. He then realized he had very little money and so only bought a box of .22 caliber shells. He left the store and returned shortly thereafter and asked to see a revolver. While the proprietor was occupied with another customer, appellant walked out with the gun.

He returned to the Robinson home and approached the building from the rear. Through a window, he saw his brother-in-law and Twilley seated at the kitchen table. He leaned in the window and asked Twilley to come outside. Robinson saw the gun and told Twilley to go into the bedroom. Twilley grabbed a Coke bottle and went towards the bedroom; appellant came around to the front of the house, entered, and followed Twilley down the hall. Shots rang out. Appellant stated Twilley lunged at him with the bottle and he just started firing and continued until the gun was empty, although Twilley was on the floor by this time. Medical evidence showed Twilley died from gunshot wounds in the head, back and extremities.

This appeal is from the "judgment and/or denial of motion for retrial."[1]

■ Appellant's sole contention is that the judgment must be reversed because the trial court allowed appellant's plea of "Not Guilty by Reason of Insanity" to be withdrawn by counsel without any express participation by appellant.

---

[1] An order denying a motion for a new trial is not appealable. (Pen. Code, § 1237.2; *Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].)

Section 1016 of the Penal Code provides that there are "five kinds of pleas" to an information; the fifth enumerated plea is "Not guilty by reason of insanity." Section 1018 of the Penal Code explicitly directs: "Unless otherwise provided by law every plea must be put in by the defendant himself in open court." The latter section does not provide for the method of *withdrawing* a plea once made.

In 1962, the California Supreme Court expressly held that since the above Penal Code sections do not require the personal withdrawal of a plea by a defendant, such a requirement should not be "read" into the statutes and, absent "some compelling circumstance, . . . we should not depart from the customary practice by which an attorney acts for his client throughout the trial." (*People* v. *Gaines,* 58 Cal.2d 630, 636 [25 Cal.Rptr. 488, 375 P.2d 296]; cert. den., 373 U.S. 928 [10 L.Ed.2d 427, 82 S.Ct. 1532].)

Dissenting in *Gaines, supra,* p. 643, Traynor, J. said in respect of a similar situation: "If the waiver were left to implication from conduct, there would be a danger of misinterpretation with respect to a right the importance of which requires there be certainty. Moreover, appellate courts would be faced with the burdensome task of determining whether the facts of the particular case warrant such an implication, whereas trial courts, without any difficulty, can eliminate doubt and safeguard the rights of both the defendant and the People by obtaining express statements from the defendant, from his attorney, and from the prosecuting attorney not merely as to whether a trial by jury is desired but specifically that *a jury is or is not waived.'* "

In *Gaines,* however, it appeared from the affidavits of defendant and counsel who represented him that the withdrawal of the plea was not authorized.

The contrary seems to be true in the case at bench. Prior to judgment appellant wrote to the trial judge in pertinent part (reproduced verbatim below) as follows:

"I would like to remind you that I entered a plea of insanity. Although I was compelled to withdraw this plea, I think you should know my reasons entering it. I wasn't trying to make anyone believe I was insane. I had only hoped the truth would be revealed and show that there was certain psychiatric reasons for my behavior at the time of the shooting. I am not trying to excuse my self, I realise that taking a Life of a human being is a terrable thing irregardless of the degree. I am truly sorry."

In *People* v. *Blye,* 233 Cal.App.2d 143, 145-147 [43 Cal. Rptr. 231], the court found a "compelling circumstance" in a record which demonstrated affirmatively that the defendant opposed withdrawal of his plea of "not guilty by reason of insanity" and had so stated to the trial court. Reversing the judgment of conviction, the appellate court distinguished *Gaines, supra,* on the ground that in *Blye,* the trial court "took it upon itself to follow the request of the defense attorney rather than to take cognizance of the wishes of the defendant himself," thereby denying defendant an opportunity to establish before a jury one of his pleaded defenses. (*People* v. *Blye, supra,* at p. 147.)

In the instant case, the attorneys, appellant, and the reporter were assembled at the bench and appellant was personally asked about, and admitted his priors. The court, in his presence, then addressed his attorney directly concerning withdrawal of the insanity plea. Appellant presumably heard the exchange between court and counsel; he made no verbal objection to the withdrawal and there is nothing in this record which remotely suggests that counsel acted contrary to his client's wishes as expressed either in court or in private.

It requires no strain for us to assume that appellant's attorney, as is his duty, acted for what in his considered judgment was for the best interests of his client. The reports of the doctors had been filed in ample time prior to the trial. There is no suggestion they were not thoroughly digested by appellant and his attorney. None of the "compelling circumstances" of which the Supreme Court speaks in *Gaines* and in *Blye* are present at bench.

The law in California at the present time is clear that absent "compelling circumstances" a personally made plea under section 1016 need not be personally withdrawn.

The appeal from the order denying a motion for a new trial is dismissed.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.