[Crim. No. 10990. First Dist., Div. Two. Nov. 24, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAUDE MARTIN, Defendant and Appellant.

## COUNSEL

Daniel H. Dibert, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROUSE, J.**—Claude Martin appeals from a judgment convicting him of two counts of first degree murder, nine counts of first degree robbery, and six counts of assault with intent to commit murder.

The record shows that defendant was charged with the above-mentioned offenses in two separate indictments. The two cases were consolidated in the trial court.

On January 27, 1970, a psychotherapist was appointed pursuant to Evidence Code, section 1017, to examine defendant.

Thereafter, on April 3, 1970, defendant appeared with his counsel, Claude Perasso of the public defender's office, and pleaded guilty to all the offenses with which he was charged.

On April 8, 1970, defendant was represented by another member of the public defender's office, Walter Trefts, Jr. The court granted Trefts' motion to appoint a psychiatrist to examine defendant under Evidence Code, sections 730 and 1017, and render a report to defense counsel only, regarding defendant's mental and emotional condition.

On April 22, 1970, defendant again appeared with counsel Trefts, who moved to withdraw the pleas of guilty. The court denied the motion.

On May 13, 1970, a hearing commenced on the issue of the degree of the murder and robbery counts. Before the taking of any evidence, however, Trefts renewed his motion to withdraw the pleas of guilty, but defendant personally advised the court that it was not his wish to do so. The court then denied the motion to withdraw the guilty pleas.

On May 20, 1970, following a four-day evidentiary hearing, the court found both murders and all nine robberies to be first degree. On the same day that the court made its findings, defendant waived his right to a jury trial as to the penalty to be imposed upon him.

The penalty phase of the trial commenced forthwith, and it was stipulated by both counsel that all of the evidence produced at the hearing on the degree of the murder and robbery counts would be admitted as evidence at the penalty trial. Additional evidence was also produced by the prose-

cution. The trial court fixed the penalty at death on the two counts of first degree murder.

On May 22, 1970, the court pronounced judgment, imposing the death penalty on the murder counts and sentencing defendant to state prison for the terms prescribed by law on the other counts of which he was convicted. The court stayed the execution of sentence on various counts pending the determination of any appeal on certain other counts.

Defendant filed a timely notice of appeal from the judgment of conviction.[1]

Defendant's first contention on appeal is that the trial court's refusal to allow him to withdraw his pleas of guilty was an abuse of discretion and constituted prejudicial error.

The record shows that when defendant originally entered the pleas of guilty, his counsel, Mr. Perasso, advised the court that defendant had told him that he wished to plead guilty but that he (Perasso) had advised defendant not to do so and was still opposed to the entry of such a plea. However, Perasso stated that he believed that defendant's decision to plead guilty was made with intelligence and "not through stubbornness or awkwardness or lack of understanding." Perasso also pointed out that defendant had previously been sentenced to death in Canada, although the sentence was never executed due to the abolition of capital punishment in that jurisdiction. In Perasso's opinion, defendant was well aware of the penalty which might result from his pleas of guilty. Perasso has also fully advised defendant of his constitutional rights and had explained to him the broad scope of the penalty trial and the nature of the evidence which could be admitted against him.

The trial court asked defendant whether he had understood what his counsel had said and whether he still wished to plead guilty to all the charges against him. Defendant replied that he did. Mr. Perasso then recited to defendant the various constitutional rights he was waiving and advised defendant that in his opinion the imposition of the death penalty was likely. The court asked Mr. Perasso whether his extensive conversations with defendant had raised any doubt in his mind as to defendant's present competence. Mr. Perasso replied, "I am afraid I have to answer that there is no question in my mind as to his present competency." Mr. Perasso added that he had found defendant "most rational." He also stated that

---

[1]As the death penalty was imposed, the notice of appeal was addressed to the Supreme Court which, after its decision in *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], transferred the pending appeal to this court.

he had talked to the psychotherapist who had examined defendant under Evidence Code, section 1017, and that nothing said by the psychotherapist had altered Perasso's view that defendant "knows whereof he speaks." The court then accepted defendant's pleas of guilty to all the offenses with which he was charged.

On April 22, when defendant was represented by Mr. Trefts, the first motion to withdraw the guilty pleas was made. Trefts stated only that he felt defendant had entered the pleas for the sole purpose of getting the matter over with. He further stated that he felt that the entry of the guilty pleas was a hindrance to the defense, that defendant was not cooperating with counsel in his present frame of mind and that he (Trefts) wanted to make sure that the record would not render him subject to criticism for failing to properly defend the case. The court denied the motion to withdraw the guilty pleas.

At the commencement of the hearing to determine the degree of the murder and robbery counts, Mr. Trefts renewed the motion to withdraw the guilty pleas. The court asked Trefts whether he had talked to his client, and Trefts replied that he had and that defendant wished his guilty pleas to stand. Trefts then questioned defendant in open court, and defendant unequivocally stated that he did not wish to withdraw his pleas of guilty to all the charges against him. The court then denied Trefts' motion to withdraw the pleas.

 It is difficult to conceive of a record which more clearly demonstrates a voluntary, intelligent and knowing decision by a defendant to enter a plea of guilty to the charges against him. It is apparent that defense counsel vehemently opposed this decision from the outset. However, Mr. Perasso was unable to find any indication that defendant was not rational, competent and fully cognizant of the probable consequences of his guilty pleas. Mr. Perasso had advised defendant that in his opinion the imposition of the death penalty was likely. Surely, no individual could have been more aware of the significance of the death penalty than defendant, since he had previously been sentenced to death in Canada. Yet, in Mr. Perasso's opinion, defendant knew precisely what he was doing when he chose to enter the guilty pleas. Although Perasso had consulted with the psychotherapist who had previously examined defendant, he had admittedly learned nothing which cast a doubt upon defendant's competence and rationality.

When Mr. Trefts subsequently undertook to represent defendant, he obtained a report from a court-appointed psychiatrist regarding defendant's mental and emotional condition. Nevertheless, when Trefts thereafter

moved to withdraw the guilty pleas, he made no attempt to argue that defendant was irrational, incompetent or in any way unaware of the consequences of his pleas of guilty. Trefts limited himself to arguing, in essence, that defendant's decision to plead guilty was unwise and placed defense counsel in the extremely unpleasant position of representing a defendant who was highly likely to be sentenced to death. Defendant, when questioned by Trefts in open court, made it clear that he had no desire whatever to withdraw his pleas of guilty.

The record before us does not even remotely suggest that the trial court abused its discretion in denying defense counsel's motions to withdraw defendant's pleas of guilty. Defendant's claim to the contrary actually amounts to the assertion that a defendant charged with a serious criminal offense should not be permitted to enter a plea of guilty without the consent of his attorney even though the defendant himself is mentally competent and has rationally and knowingly reached the decision that he wishes to plead guilty. The law lends no support to any such argument. ▮ Although an attorney representing a criminal defendant has the power to control the court proceedings, that power may not be exercised to deprive a defendant of certain basic rights such as the entry of a plea or the right to a jury. (*People* v. *Robles* (1970) 2 Cal.3d 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Blye* (1965) 233 Cal.App.2d 143, 149 [43 Cal.Rptr. 231].)

The defendant in the instant case made a rational and knowing decision to disregard the advice of two attorneys who were representing him and to enter pleas of guilty to all the offenses with which he was charged. Defendant possessed the right to make this decision for himself, and neither Mr. Trefts nor the trial court possessed the authority to countermand defendant's decision and compel him to plead not guilty against his will.

Defendant contends that during the course of the hearing to determine the degree of the murder and robbery counts, the trial court committed prejudicial error by admitting evidence of certain incriminating extrajudicial statements made by defendant when he was interrogated by the police. Defendant argues that the statements should have been excluded from evidence because the prosecution failed to establish that defendant had intelligently and knowingly waived his right to be represented by counsel during the interrogation. The record does not bear out this contention.

Inspector Fotinos of the San Francisco Police Department testified that he was a member of the homicide detail and was assigned to conduct an investigation into the death of one Joseph Russell at the Le Tango Bar in San Francisco. Inspectors Fotinos and Coreris talked with defendant

at approximately 8:30 p.m. on December 15, 1969, at the city prison. Fotinos read from a printed card which fully advised defendant of his constitutional rights. Defendant was asked whether he understood each of these rights, and he stated that he did. He was then asked if he wished to talk to Fotinos and Coreris, and he stated that he did. He also signed the card. Fotinos denied that defendant was threatened in any way or was promised any immunity or reward.

Defense counsel then conducted a *voir dire* examination of Inspector Fotinos, and he established that defendant had been arrested on December 12 and that Fotinos had first talked to him on December 12 or December 13. Defendant was being held on suspicion charges pertaining to robbery and assault. The police also suspected that defendant had been involved in two murders. Defendant was fully advised of his constitutional rights and indicated that he was willing to talk to the police.

The prosecutor then resumed his direct examination of defendant, but defense counsel immediately objected to the evidence on the ground that defendant was suspected of a capital offense at the time and had an absolute right to have an attorney present during the police interrogation. The court overruled the objection.

Fortinos then testified that on December 15 defendant admitted having gone to the Le Tango Bar at 1 a.m. on November 19, 1969, and having committed a robbery. He also admitted that in the course of the robbery he stabbed Joseph Russell in the chest with a knife. Inspector Coreris took notes of the conversation, but defendant refused to sign the notes.

Inspector Smith of the San Francisco Police Department testified that he was assigned to the robbery detail and had occasion to talk to defendant at approximately 8 a.m. on December 12, 1969. The conversation took place at the Hall of Justice. In addition to Inspector Smith, Inspectors Coreris and Wydler were also present, and Chief of Inspectors Lee joined the group before the conclusion of the conversation.

Smith testified that defendant was first fully advised of his constitutional rights, and given a printed form which enumerated them. Defendant had previously been asked if he could read English, and he stated that he could. The printed form given to defendant concluded with the statement, "I do or do not wish to waive my rights as listed above." After defendant had read the form, Smith asked him if he wished to talk to the police and explained to him that he could indicate his decision by circling the words "do" or "do not," initialing the form and signing it. Defendant circled the

word "do" and signed the form. Smith had not threatened defendant in any way or promised him any immunity or reward.

Defendant was then questioned concerning a robbery of the Chevy Chase Tavern which took place on October 28, 1969. Defendant admitted having committed the robbery and also admitted that he was armed with a gun and shot one Ray Gorman in the face.

Defendant was also questioned concerning a robbery of the Devonshire Lounge which took place on September 25, 1969. Defendant admitted committing that robbery and shooting the bartender, Alex Rafalovich, in the stomach. However, defendant stated that the shooting was accidental and occurred because Rafalovich was trying to stop defendant from committing the robbery.

■ The above summary of the evidence shows that defendant was fully and adequately advised of all his constitutional rights and voluntarily waived them before he was subjected to any questioning by the police. Defense counsel did not contend in the trial court that defendant was incompetent to make such a waiver, and the prior proceedings in connection with the guilty pleas had rather effectively demonstrated that defendant was an individual who was competent and capable of acting in an intelligent and rational manner. It is clear that no claim to the contrary may be advanced for the first time on appeal. (Evid. Code, § 353, subd. (a).)

Defendant's contention that an accused suspected of a capital offense has an absolute right to be represented by an attorney during police interrogation and that such right may not be waived by the accused is wholly without merit. (*People* v. *Lara* (1967) 67 Cal.2d 365, 376-377 [62 Cal. Rptr. 586, 432 P.2d 202]; *People* v. *Allen* (1969) 275 Cal.App.2d 428, 437 [79 Cal.Rptr. 793]; *People* v. *Robinson* (1969) 274 Cal.App.2d 514, 521 [79 Cal.Rptr. 213].)[2]

■ Defendant's next contention pertains to certain evidence which was produced during the penalty phase of the trial and which defendant now contends established that his arrest was unlawful and that the admissions which he subsequently made to the police were therefore inadmissible as fruit of the poisonous tree. The record shows that defense counsel did not

---

[2]We note that although the two defendants in the *Lara* case and the defendant in the *Robinson* case were minors and one of the defendants in *Lara* was sentenced to death, the court nevertheless held that they had no absolute right to consult with an attorney before waiving their constitutional rights and submitting to police interrogation.

raise this objection in the lower court, but argued only that due to the alleged illegality of the arrest, a gun found in defendant's possession should have been excluded from evidence. During the prior hearing to determine the degree of the murder and robbery counts, defense counsel at no time challenged the illegality of his arrest. It is clear that a defendant may not argue on appeal issues which he did not raise in the trial court. (Evid. Code, § 353, subd. (a).) Further, in view of the decision by our Supreme Court in *People* v. *Anderson.* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], it is not necessary to discuss alleged errors occurring during the penalty phase of the trial.

The *Anderson* decision renders moot defendant's argument relative to the unconstitutionality of the death penalty. Similarly, *Anderson* obviates the need for detailed discussion of defendant's additional contentions that the court should have excluded from evidence, during the penalty phase of the trial, defendant's prior death sentence in Canada and his prior criminal activity.

Such evidence disclosed that defendant admitted that he had escaped from a super-maximum security prison in Canada where he was serving time for first degree murder, and that he and his confederates robbed two banks on the day following their escape. He admitted that he had done time for robbery and that it had taken him 10 years to find his crime partner who had "turned him in." He said that he just walked into a bar where that former crime partner was tending bar and shot him to death, following which he robbed all of the patrons. Defendant then said that "I know who ratted on me here" and "I'm going to get out of prison and kill them too"; "You'll never hold me in prison, I'll escape again."

Obviously, any further recitation of the sordid details of killing and murderous assaults which occurred in the commission of the robberies in this case is unnecessary to the resolution of the legal issues involved. However, it must be noted that the facts disclosed by the record present a pattern of regularity in the defendant's exhibition of cruel, wanton and ruthless conduct toward his victims which, when considered together with his background of criminal activity, should serve as a sobering reminder to all involved in the administration of justice that, despite great and progressive strides made toward the betterment of mankind in this century, behavioral scientists have not yet learned to deal with the frailties of human nature in an appropriate manner.

If there is a factual situation which might justify the imposition of a death penalty, then we must agree with the trial court that this was such a

case. However, our Supreme Court in its landmark decision in the case of *People* v. *Anderson, supra,* 6 Cal.3d 628, determined that the administration of such extreme punishment is cruel and unusual, hence violative of both the state and federal Constitutions. We are compelled, therefore, under the mandate of *Anderson,* to set aside that portion of the judgment which imposed the death penalty.

The judgment, insofar as it provides for the penalty of death, is modified to life imprisonment. In all other respects, the judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied December 22, 1972, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied January 17, 1973.